(February 5, 1904.)

## CARTIER v. BUCK.

[75 Pac. 612.]

NEW TRIAL NOT GRANTED WHEN EVIDENCE IS CONFLICTING.

1. Where it is shown by the record that there is a substantial conflict in the evidence on the material issues involved, a new trial will not be granted, neither will the judgment be modified under the facts established in the case.

(Syllabus by the court.)

APPEAL from the District Court of Fremont County. Honorable J. C. Rich, Judge. New trial denied by Honorable J. M. Stevens, Judge.

Action to settle the water rights of Camas creek. Judgment for plaintiff from which certain defendants appeal. Judgment sustained.

The facts are stated in the opinion.

Hawley & Puckett, for Appellants.

It will not be disputed that in order to constitute a legal appropriation the water claimed must be applied to some beneficial use or purpose. The true test of appropriation of water is the successful application thereof to the beneficial use designed, and the method of diverting or carrying the same or making such application is immaterial. (*Thomas v. Guiraud,* 6 Colo. 530.) If one appropriates part of the waters of a stream for a certain period of time, any other person may not only appropriate the residue and acquire a right thereto as perfect as the first appropriation, but may also acquire a right to the quantity of water used by the first appropriator at such times as it is not needed or used by him. (*Smith v. O'Harra,* 43 Cal. 371; *Barnes v. Sabron,* 10 Nev. 217.) The rights of a prior appropriator of water are limited by his beneficial use, and not by the original capacity of his ditch; and where he has ceased to use only a specified quantity of the water, or

has limited his regular use of it for irrigation, all of the water not used is subject to subsequent appropriation by another. (*Santa Paula Water Works v. Peralta,* 113 Cal. 38, 45 Pac. 168; *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 990; *McDonald v. Bear River etc. W. M. Co.,* 13 Cal. 220.)

F. S. Dietrich, for Respondent.

It will be observed from the record that no question is made of the correctness of the decree, so far as the amounts and the dates of the various appropriations as fixed by the decree are concerned, and consequently only a small portion of the evidence heard by the court is incorporated in the record. In other words, the court found and decreed correctly the date and amount of the appropriation of each of the parties to the suit, including the plaintiff, and also that the water so appropriated had always been put to a beneficial use. Under the rule laid down in *McGinness v. Stanfield,* 6 Idaho, 372, 55 Pac. 1020, when the court had correctly found and decreed these facts, it had done all that it was required to do. In *McGinness v. Stanfield,* the court says: "Priority of appropriation having been established, as well as the amount of the water appropriated and the beneficial use thereof, it seems to us that the functions of the court under the statutes have reached their limit. Upon the main question discussed by appellants, that is, the effect of the use of water by the upper appropriators upon the supply at the lower end of the stream, we maintain that the great preponderance of evidence supports the findings of the court. Appellants contended in the lower court that in the early years the stream sometimes went dry. Upon that particular phase of the controversy there is a conflict of testimony, but even here the preponderance supports the findings of the court. Even if the preponderance of the evidence were against the findings, still under the rule universally established and very recently reiterated by this court, this court should not disturb the findings of the trial court. (See *Simons v. Daly, ante,* p. 87, 72 Pac. 507; *Stewart v. Hauser, ante,* p. 53, 72 Pac. 719.)

STOCKSLAGER, J.—This is an action brought in the district court of Fremont county and was originally commenced by the plaintiff against a few of the defendants for the purpose of restraining them from using the waters of Camas creek and by such use lessening the plaintiff's water supply.

After the suit had been commenced an order of the court was made bringing in all other parties who were users of the waters of said stream as defendants. By agreement made in open court defendants were permitted to deny the allegations of the complaint by general denial. The several defendants in addition to their answers filed cross-complaints setting up their several rights to the use of the waters of said stream and the dates of their appropriations. The cause was tried before the court without a jury, and the court by its findings of fact, found the relative rights of the parties in and to the use of the waters, following it up with a decree founded upon such facts. A large number of defendants represented by Hawley & Puckett as their attorneys, gave notice of their intention to move for a new trial, and thereupon prepared a statement on motion for a new trial, which was settled and allowed. An order denying a new trial was made. From the order denying the new trial and from the judgment said defendants appealed. This statement is taken from the brief of appellants and is adopted by the court, as it is conceded by respondent to be in the main correct. Respondent supplements the statement by the further statement that in the years 1883, 1884 and 1885, about the time the railroad was built through Idaho from Utah to Montana, a number of settlers entered lands three or four miles west of Camas railroad station along Camas creek near its lower end. After all of the waters of Camas creek were appropriated at the lower end of the stream, settlers upon the tributaries gradually began to use the water regardless of the rights of the lower claimants, though prior appropriators.

Settlement at the upper end of the stream progressed slowly until about the year 1897 or 1898, when both settlement and increase in the area of irrigation seem to have been given a considerable impetus, and the plaintiff, being unable to get water even up as late as the first of July each year, brought

this suit to have his rights determined and to have the upper and late appropriators enjoined from interfering with his rights.

After decree was entered, plaintiff sold and transferred all of his holdings to the Wood Livestock Company, and he now asks that it be now recognized as the respondent in the place and stead of the plaintiff in the lower court.

Counsel for appellant say in their brief that the statement on motion for a new trial shows that there is no dispute as to the amount of water decreed to the various parties to the suit by the decree of the court, nor is there any dispute as to the time from which the several rights of the parties should date. It is argued, however, that the use of the water by the subsequent appropriators—among them the appellants—has been beneficial to respondent and its predecessors creating what might be termed an underground reservoir, thereby retaining the water that seeps into the ground or reservoir from the early spring irrigation of the lands near the head of the stream; gradually this water finds its way back into the channel and passes on down, thereby prolonging the life of the stream. If the theory is true, the users at the lower end of the stream are certainly benefited.

I have very frequently heard this theory advanced in the district court and have heard much evidence on the subject. This, however, is the first time the question has reached this court. One thing seems to be noticeable in all cases where this question arises; that is, that this peculiar system of reservoirs or spongy condition of the soil is always discovered by the parties at the upper end of the stream, and as vigorously disputed and denied by the lower appropriators.

If this contention of appellants is true, it is certainly a good and sufficient defense to this action.

Before the plaintiff in the lower court could obtain injunction relief, it was incumbent on him to show that the use of the waters of Camas creek, or some of its tributaries, by the defendants prevented the water from flowing down to him in the natural channel, and also that had they not disturbed it, it would have found its way to his premises. This being the

question upon which the rights of the parties to this action
must be determined, it will be necessary to examine the evi-
dence at some length. The fourth finding of the court is:
"That of the several amounts of water so appropriated, the
plaintiff and his predecessors in interest, during the several
years in which said several amounts of water were first appro-
priated and diverted as aforesaid, and continuously ever since
said several dates of appropriation, except when prevented from
so doing by the unlawful interference of the defendants and
other persons, have continued to divert and use during the
whole of the irrigating season each year for domestic and stock
purposes, and for the purpose of irrigating certain of said
tracts of land and raising agricultural crops thereon, the fol-
lowing amounts during and from the dates set opposite there-
to, to wit: Seventy-five inches, dated April 1, 1883; seventy-
five inches, dated April 1, 1884; three hundred and fifty inches,
dated April 1, 1885; one hundred inches, dated April 1, 1886;
seventy-five inches, dated April 1, 1895.

"That of the several amounts of water so appropriated, as
set out in the foregoing paragraph (3), the plaintiff and his
predecessors in interest, during the years in which said several
amounts of water were first appropriated and diverted as afore-
said, and continuously ever since said several dates of appro-
priation, except when prevented from so doing by the unlawful
interference of the defendants and other persons, have con-
tinued to divert and use during each and every irrigating sea-
son up to July 1st of each year, for the purpose mainly of ir-
rigating wild hay upon certain of said lands, which the court
finds to be a paying crop when irrigated, and needs irrigation
up to but not after July 1st, the following amounts during and
from the dates set opposite thereto, to wit: Eighty-five inches,
dated April 1, 1883; eighty-five inches, dated April 1, 1884;
four hundred and seventy-five inches, dated April 1, 1885;
sixty inches, dated April 1, 1887; two hundred inches, dated
April 1, 1895.

"That the rest of said water so appropriated, to wit, three
hundred inches, April 1, 1883, and one hundred and fifty in-
ches, April 1, 1887, was never appropriated or used except dur-

ing the spring high-water season, and the same has during the high-water season every year been used by plaintiff and his predecessors in interest in producing hay and pasture for stock."

The statement on motion for new trial says that "Plaintiff and his predecessors appropriated of the waters of Camas creek, seventy-five inches from April 1, 1883; seventy-five inches from April 1, 1884; three hundred and fifty inches from April 1, 1885; four hundred inches from April 1, 1886; five hundred inches from April 1, 1895; and that said amounts of water are necessary for the successful cultivation of said lands, over and above the water appropriated for use upon said hay lands."

We have read the evidence of the witness Ross, who was state engineer, and whose business was devoted to the important subject of irrigation in this state. He testifies to the theory advanced by appellants that the use of water at the head of a basin or stream in the early spring seems to hold the water in check and thereby prolongs the life of the stream, thus benefiting the settlers below rather than otherwise. That he made some examination of the lands in the vicinity of Kilgore and which is the property of the appellants, and expresses the opinion that the spongy nature of the soil resulting from early irrigation, in that vicinity, should prolong the flow of water in the creek below and thus furnish water later in the season to the settlers below.

Much evidence was introduced by appellant and respondent as to the condition of this stream in the vicinity of the respondent's lands dating from the early '60's down to the time of the trial. It is shown that the settlement in and about Kilgore is of but recent date. The evidence of the condition of the stream from July 1st until in September, when the water begins to increase, is very conflicting, some witnesses testifying that when they first knew the stream at the old stage crossing near respondent's lands there was water there at all seasons of the year; others testifying that at about the same dates they had to go miles above the crossing to get water for their horses. It is shown that trees were planted at the old town of Camas

or in that vicinity, and that they grew and prospered until after the settlements above referred to, when for the want of water they died. A careful reading of the evidence leads us to the conclusion that a jury might have had some difficulty in arriving at the true state of facts as to this question.

Under the well-settled and oft-repeated rule that this court will not disturb the findings of the trial court where there is a substantial conflict in the evidence, we should have no difficulty in arriving at a conclusion in this case.

The judgment of the lower court upon the order overruling the motion for a new trial is affirmed, with costs to respondent.

It appears from the record that the appeal from the *judgment* was not taken within one year, as provided by the statute, section 4807, Revised Statutes. It is therefore ordered that that appeal be dismissed, with costs in favor of respondent.

Sullivan, C. J., and Ailshie, J., concur.