951 P.2d 943

In re SRBA Case No. 39576, Basin–Wide Issue # 5B (General Provision # 2 and # 4—Basin 34) Entered February 12, 1997.

STATE of Idaho and Big Lost River Irrigation District, Appellants,

v.

G. David NELSON; San Felipe Ranch; Mitchell D. Sorensen; Francis L. Smith; Wylie F. Smith; and the United States of America, Respondents.

Nos. 23814, 23815.

Supreme Court of Idaho,
Boise, September 1997 Term.

Jan. 6, 1998.

Alan G. Lance, Attorney General, Cheri C. Copsey, Deputy Attorney General (argued), Boise, for appellant State of Idaho.

Ling, Nielsen & Robinson, Rupert, for appellant Big Lost River Irrigation District. Roger D. Ling argued.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for respondents G. David Nelson and San Felipe Ranch. Patrick Brown argued.

SILAK, Justice.

This is an appeal from the Snake River Basin Adjudication (SRBA), regarding whether General Provisions concerning Basin 34 should be included in the SRBA court's partial decree. On January 16, 1996, the SRBA court designated basin-wide issue 5B as "[w]hether General Provisions 2 and 4 in the *Amended Director's Report for Reporting Area 1 (Basin 34)* are necessary for the definition of the rights or for the efficient administration of the water rights." The SRBA court affirmed the Special Master's decision that General Provisions 2 and 4 from the *Amended Director's Report for Reporting Area 1 (Basin 34)* (Director's Report)

would not be decreed. We remand the case to the SRBA court to make a further factual inquiry as to whether the provisions are necessary for the definition of a water right or the efficient administration of a water right.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Underlying Facts.

Basin 34, also known as the Big Lost River Basin (the Big Lost), is located in Butte and Custer Counties in central Idaho, and is approximately 1,400 square miles in area. A unique feature of the Big Lost is that surface flows never actually reach the Snake River, but instead sink into the ground within the Big Lost River Basin, or the Eastern Snake Plain Aquifer, thus giving rise to the Basin's name.

This area was subject to an earlier decree in the case of *Utah Construction Co. v. Abbott,* Equity No. 222 (D.E.1923) (*U.C.Decree*). That decree provided that the upper and lower parts of the Big Lost River (with the Mackay Dam as the dividing line) would be administered as separate sources under certain conditions. The decree also set forth the manner of administration for the "Back Channel" and provided for a minimum flow beneath the dam.

The Utah Construction Company conveyed its rights to the newly-formed Big Lost River Irrigation District (BLRID), which then purchased the Mackay Dam and Reservoir from the Utah Construction Company. The BLRID devised a plan of operation, adopted by the district court in the *BLRID* Decree of 1936, which provided for a "rotation for credit" plan. Under this plan, water stored in the Mackay Reservoir was allocated to users in a manner that is basically the opposite of "first in time, first in right." Junior natural flow water right holders are allocated the most storage water, with senior right holders being allocated the least. This plan of operation allowed all of the users in the Big Lost to have an adequate water supply through the irrigation season. Water rights in the Big Lost have been administered per the

*U.C. Decree* and the *BLRID Decree* since they were issued.

Since there were other water rights within the Big Lost which had not been adjudicated, they were not subject to administration by a watermaster. Thus, in 1992, the district court issued an order for interim administration of water rights within the Big Lost in accordance with the Director's Report. That order was extended in 1993, 1994, and 1995, and those orders required the Director to promulgate rules covering the areas addressed by the General Provisions.

General Provision 2 [1] sets forth the manner in which surface water within the Big Lost is to be administered. Section 2.a (single system provision) provides that the water is administered as a single system during the irrigation season when the flow at the Howell gage reaches 750 cfs, and until it recedes to 300 cfs. However, at all other times the natural flow rights with a point of diversion above Mackay Reservoir are administered separately from those below.

Section 2.b (separate streams provision) provides that the surface water from some streams (named in the provision) are to be administered separately from the Big Lost River surface water. Section 2.c (back channel provision) provides that water from the "Back Channel," which separates from the main channel, is to be administered as part of the natural channel of the Big Lost River. Section 2.c further sets forth the levels at which the flow in the Back Channel should be kept, based upon flows at the Howell gage on the Big Lost River.

General Provision 4 [2] sets forth a practice called "rotation for credit," which apparently has been the custom in the Big Lost for some time. Section 4.a states that Mackay Dam and Reservoir must have a minimum flow of 50 cfs at the 2–B gage. That amount is deemed unavailable for delivery to surface water rights outside of the irrigation season.

Section 4.b states that although water rights which do not have storage as the purpose of use cannot be stored, such rights may be rotated into storage with the approv-al of the Director and BLRID, "when such practice improves the efficiency of water use as contemplated by the Irrigation District's plan of operation." If rotation water is not used in the same season in which it is stored, it reverts to BLRID storage water. Rotation cannot occur prior to the irrigation season, and can only be used on the land to which it is appurtenant. Finally, section 4.b provides that

> if the reservoir fills after rotation has begun in any year and 1905 priority natural flow water rights are able to receive water, all rotation credits are lost and all water in the reservoir at the time it fills reverts to storage water of the Big Lost River Irrigation District.

### B. Procedural Background.

On March 14, 1996, the Special Master ruled that General Provisions 2 and 4 should not be decreed because they did not apply to all water rights in the SRBA as required by Idaho Code section 42–1411(3). Additionally, the Special Master held that the Provisions did not have to be included in the decree under principles of res judicata or collateral estoppel and were not necessary to administer or define a water right. After a hearing, the SRBA district court adopted the Special Master's findings of fact, conclusions of law, and recommendations as its own.

## II.

### ISSUES ON APPEAL

The issues on appeal are:

1. Whether a General Provision in a court decree which orders certain water rights to be distributed as though from separate sources further defines the source element of an affected individual water right.

2. Whether the "rotation for credit" practice approved in the Big Lost River Irrigation District operation plan modifies or further defines the priority element of an affected individual water right.

---

1. General Provision 2 is attached to this opinion at Appendix A.

2. General Provision 4 is attached to this opinion at Appendix B.

3. Whether the Idaho Department of Water Resources (IDWR) can change decreed elements of a water right through the adoption of administrative rules.

4. Whether the SRBA District Court erred in refusing to include in its decree a General Provision 4 dealing with the "rotation for credit" plan, where the practice is not addressed by any express legislative regulation or the general rules adopted by the courts of this state in the administration of water rights.

## III.

## STANDARD OF REVIEW

■ When this Court reviews whether certain General Provisions from the Director's Report should be included in the SRBA decree, it is presented with a mixed question of law and fact. *A & B Irrigation Dist. v. Idaho Conservation League*, 97.20 ISCR 971, 972, 131 Idaho 411, 958 P.2d 568, 1997 WL 612633 (Oct. 3, 1997).[3] The factual question involves defining the proposed General Provision and the circumstances under which it is applied. The legal question involves whether the provision will facilitate the efficient administration of water rights in a decree. *Id.* Mixed questions of law and fact are reviewed as questions of law *de novo*. *Doolittle v. Meridian Joint Sch. Dst.*, 128 Idaho 805, 811, 919 P.2d 334, 340 (1996).

## IV.

## ANALYSIS

### A. The SRBA Court Erred In Holding That General Provision 2 Not Be Decreed Because It Did Not Define An Element Of A Water Right.

■ The district court relied on I.C. § 42–1411(3) which states "[t]he director may include such general provisions in the director's report, as the director deems appropriate and proper, to define and to administer all water rights." I.C. § 42–1411(3) (1997). Consequently, the SRBA court did not include the provisions in the decree be-

cause the provisions did not apply to all water rights. At the time of its decision, the district court did not have the benefit of this Court's statement in *A & B Irrigation Dist. v. Idaho Conservation League* that, "a general provision is an administrative provision that generally applies to water rights but it need not apply to every water right." *A & B Irrigation Dist.*, 97.20 ISCR at 972, 131 Idaho at 414, 958 P.2d at 571.

A General Provision is to be included in a decree if it is necessary to define or efficiently administer water rights. Idaho Code section 42–1412(6) describes which provisions should be included in the SRBA court's decree. The Code states that

[t]he decree shall also contain an express statement that the partial decree is subject to such general provisions necessary for the definition of the rights *or* for the efficient administration of the water rights.

I.C. § 42–1412(6) (1997) (Emphasis added).

Idaho Code section 42–1411(2) describes the basic elements of a water right: the claimant's name and address; the source of water; the quantity of water; the priority date; the legal description of the point of diversion or the beginning of the place of use; the annual volume of consumptive use; any conditions placed on the use; and "such remarks and other matters as are necessary for definition of the right, for clarification of any element of a right, or for administration of the right by the director." I.C. § 42–1411 (1997). A General Provision that defines one of the basic elements listed in I.C. § 42–1411(2) should be included in the SRBA decree pursuant to I.C. § 42–1412(6).

The SRBA court determined that the General Provisions were not necessary by using the test of whether the absence of any of the General Provisions would prevent the IDWR from administering water rights. In *A & B Irrigation Dist. v. Idaho Conservation League*, this Court held that a "general provision is 'necessary' if it is required to define the water right being decreed or to efficiently administer water rights in a water right decree." *A & B Irrigation Dist.*, 97.20 ISCR

---

**3.** The portion of *A & B Irrigation Dist.* that we rely on in this opinion is not affected by the

granting of the petition for rehearing (Dec. 12, 1997).

at 972, 131 Idaho at 414, 958 P.2d at 571. Since these General Provisions regulated whether water is administered from a single or separate water source, it is possible that these provisions define the source element or are necessary for the efficient administration of a water right. Considering this test was not employed by the SRBA Court, we remand this case for further factual findings as to whether these provisions are necessary for the efficient administration of a water right or to define a water right.

**B. The District Court's Holding That The Rotation For Credit Practice Should Not Be Included In The Decree Was Erroneous. The Rotation For Credit Provision Should Be Included In The Decree If It Is Necessary For The Efficient Administration Of A Water Right.**

■ The district court found that without General Provision 4.b., the administration of these water rights might be nearly impossible, yet the provision should not be included because I.C. § 42–1411(3) precluded the inclusion of the provision because the provision did not apply to all water rights. As noted above, a provision is to be included in a decree if it is necessary to define or for the efficient administration of a water right, and it is not necessary that the provision apply to all water rights. *A & B Irrigation Dist.*, 97.20 ISCR at 972, 131 Idaho at 414, 958 P.2d at 571. Therefore, if the provision is necessary for the efficient administration of a water right, we hold that the provision should be included in the decree, and remand for further factual findings as to the necessity of this provision either to the definition or the administration of these water rights.

**C. The District Court's Finding That The General Provisions Need Not Be Decreed Because The Provisions Were Already Included In The Idaho Department Of Water Resources' Promulgated Rules Was Erroneous.**

■ The IDWR has the power to issue "rules and regulations as may be necessary for the conduct of its business." I.C. § 42–1734(19) (1996). These rules and regulations are subject to amendment or repeal by the IDWR. I.C. § 67–5201(20) (1997). Additionally, the IDWR's Director is in charge of distributing water from all natural water resources or supervising the distribution. I.C. § 42–602 (1996). Including these General Provisions in a decree will provide finality to water rights, and avoid the possibility that the rules and regulations could be changed at the sole discretion of the Director of the IDWR.

■ Finality in water rights is essential. "A water right is tantamount to a real property right, and is legally protected as such." *Crow v. Carlson,* 107 Idaho 461, 465, 690 P.2d 916, 920 (1984). An agreement to change any of the definitional factors of a water right would be comparable to a change in the description of property. *Olson v. Idaho Dept. of Water Resources,* 105 Idaho 98, 101, 666 P.2d 188, 191 (1983). Additionally, pursuant to Idaho Code section 42–220, all rights that are decreed pass with conveyance of the land and therefore the land could be sold with the certainty that the water would be distributed as decreed. Further, these General Provisions describe common practices in the Big Lost which are unique and sometimes contrary to general water distribution rules.

■ A decree is important to the continued efficient administration of a water right. The watermaster must look to the decree for instructions as to the source of the water. *Stethem v. Skinner,* 11 Idaho 374, 379, 82 P. 451, 452 (1905). If the provisions define a water right, it is essential that the provisions are in the decree, since the watermaster is to distribute water according to the adjudication or decree. I.C. § 42–607 (1997).

Additionally, we conclude that the General Provisions provided by I.C. § 42–1412(6) should be included in a decree if they are deemed necessary for the efficient administration or to define a water right. Provisions necessary for the efficient administration of water rights should be preserved in the SRBA decree, not merely in the Administrative rules and regulations.

## V.

### CONCLUSION

We remand for further factual findings as to whether General Provisions 2 and 4 pertaining to Basin 34 are necessary for the efficient administration of a water right or are necessary to define a water right. No costs are awarded on appeal.

TROUT, C.J., and JOHNSON, SCHROEDER and WALTERS, JJ., concur.

### APPENDIX A

2. General Provision 2: Administration of Surface Sources Within Basin 34. All surface waters of the Big Lost River and its tributaries shall be administered as a single water system, except as provided in this general provision 2.a. through 2.c.

a. During the irrigation season, from the time the flow at the Howell gage increases to 750 CFS, until the time when the flow recedes to 300 CFS, all surface waters of the Big Lost River and its tributaries, except as listed in paragraph b. below, shall be administered as a single water source. At all other times natural flow water rights (other than water rights for storage purposes) with a point of diversion above Mackay Reservoir shall be administered separately from the natural flow water rights with a point of diversion downstream from Mackay Reservoir. This provision is made under conditions existing as of the commencement of the SRBA (including diversions above the Howell gage); if diversions are made from the Big Lost River or its tributaries above the Howell gage pursuant to rights not existing as of the commencement of the SRBA, then the amounts diverted will be added to the amount of the flow at the Howell gage for purposes of applying this provision.

b. The surface waters of the following streams shall be administered as separate from the surface waters of the Big Lost River: Rock Springs Creek, Rock Creek, Beda Creek, Corral Creek, Sage Creek, Upper Cedar Creek, Lower Cedar Creek, Dry Creek (also known as Cedar Creek), Pete Creek, Willow Creek, Pinto Creek, Lehman Creek, Vance Creek, Grant Creek and Hamilton Creek.

c. The Back Channel, which separates from the main channel of the Big Lost River in the NE¼NE¼, Section 5, Township 8 North, Range 22 East, B.M., shall be administered as part of the natural channel of the Big Lost River.

i. When the flow at the Howell gage is less than 1400 CFS, the flow in the Back Channel shall be kept as near as practicable to 150 CFS, but shall not exceed that amount.

ii. When the flow of the Howell gage is at or exceeds 1400 CFS, the flow in the Back Channel shall be kept as near as practicable to 200 CFS. The flow shall not exceed that amount unless all surface water rights existing at the time of administration (including water rights with a junior priority), and that are within their period of use, are satisfied.

iii. These provisions shall not be considered to enlarge the amount of water to which appropriators diverting from the Back Channel are entitled.

### APPENDIX B

4. General Provision 4: Special Provision as to Storage.

a. Mackay Dam and Reservoir shall be operated to maintain a minimum flow of 50 CFS at the 2-B gage. This 50 CFS shall be deemed unavailable for delivery to surface water rights below Mackay Dam outside the irrigation season.

b. Water rights that do not include storage as a purpose of use may not be stored. Surface water rights may, however, be rotated into storage, with the approval of the Director of the Idaho Department of Water Resources and the Big Lost River Irrigation District, when such practice improves the efficiency of water use as contemplated by the Irrigation District's plan of operation. Any water stored under such a rotation, if not used in the same irrigation season in which it is stored, shall revert to storage water of the Big Lost River Irrigation District at the end of the irrigation season. Rotation into storage cannot occur prior to the need for irrigation water on the land in any year; water rotated into storage may

only be used on the land to which the water right being rotated is appurtenant; if the reservoir fills after rotation has begun in any year and 1905 priority natural flow water rights are able to receive water, all rotation credits are lost and all water in the reservoir at the time it fills reverts to storage water of the Big Lost River Irrigation District.

