958 P.2d 568

In re: SRBA Case Nos. 39576, 91–00005 ex rel. General Provisions re: Basin–Wide Issue 5, Entered 4–26–96.

A & B IRRIGATION DISTRICT, Falls Irrigation District, and Burley Irrigation District; Fremont–Madison Irrigation District and Mitigation Group; Payette River Water Users Association, Inc.; State of Idaho, Appellants,

v.

IDAHO CONSERVATION LEAGUE, Idaho Rivers United and Idaho Wildlife Federation; Amalgamated Sugar Company, City of Ashton, City of Bliss, City of Buhl, City of Burley, City of Cascade, City of Chubbuck, City of Council, City of Declo, City of Donnelly, City of Eden, City of Emmett, City of Fairfield, City of Fruitland, City of Garden City, City of Glenns Ferry, City of Grand View, City of Hailey, City of Heyburn, City of Inkom, City of Kuna, City of Mackay, City of Mountain Home, City of Mud Lake, City of Nampa, City of New Plymouth, City of Meridian, City of Middleton, City of Minidoka, City of Oakley, City of Parma, City of Paul, City of Payette, City of Rigby, City of Ririe, City of Roberts, City of Rupert, City of St. Anthony, City of Sugar City, City of Weiser, City of Ucon, Basic American Foods, Inc., The City of Pocatello, Lamb–Weston, Inc., North Snake Ground Water District, Sand Springs Ranch Partnership, Ore–Ida Foods, Inc. and J.R. Simplot Company; Don Mc Farland, Carol Mc Farland and Sundance, Inc.; Idaho Ground Water Appropriators, Inc.; Nampa & Meridian Irrigation District, Allen Noble Farms, Inc., Clear Lakes Trout, Inc., Cottonwood Canal Company, Farm Development Corporation, Grindstone Butte Mutual Canal Company, G. Patrick Morris, Carl Nicholson, Thomas Nicholson, Allen T. Noble, Rainbow Trout Farms, Inc., Rim View Trout Company and Sailor Creek Water Company; Twin Falls Canal Company and North Side Canal Company; Idaho Power Company; Boise–Kuna Irrigation District, New York Irrigation District, Wilder Irrigation District and Big Bend Irrigation District; Hagerman Water Right Owners, Inc.; G. David Nelson and San Felipe Ranches; The United States Of America, Respondents.

Nos. 23223, 23224, 23225 and 23226.

Supreme Court of Idaho,
Boise, January 1997 Term.

Oct. 3, 1997.

Opinion Vacating Decision in Part on Reargument and Rehearing April 22, 1998.

Ling, Nielsen & Robinson, Rupert, for Appellants A & B Irrigation District, Falls Irrigation District and Burley Irrigation District. Roger D. Ling argued.

Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for Appellant Fremont–Madison Irrigation District and Mitigation Group.  Did not participate.

Elam & Burke, P.A., Boise, for Appellant Payette River Water Users Association, Inc. Scott L. Campbell argued.

Alan G. Lance, Attorney General, Clive Strong, Deputy Attorney General, Boise, for Appellant State of Idaho. Clive Strong, Deputy Attorney General argued.

Betty Richardson, United States Attorney, Boise, William B. Lazarus, Department of Justice, Washington, D.C., for Respondent United States of America. Did not participate.

Beeman & Hofstetter, P.C., Boise, for Respondents Amalgamated Sugar Co., all cities, Lamb–Weston, North Snake Ground Water Dist., Sand Springs Ranch Partnership, Ore–Ida Foods, Inc., and J.R. Simplot Co. Dana L. Hofstetter argued.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for Respondents Don McFarland, Carol McFarland and Sundance, Inc. John K. Butler argued.

Givens, Pursley & Huntley, Boise, for Respondent Idaho Ground Water Appropriators. Did not participate.

Lawrence J. Lucas, Boise, argued for Respondent Idaho Conservation Groups.

Ringert, Clark Chtd., Boise, for Respondent Nampa–Meridian Irrigation District, et al. Did not participate.

Rosholt, Robertson & Tucker, Twin Falls, for Respondents Twin Falls Canal Company and North Side Canal Company. Norman M. Semanko argued.

Hawley, Troxell, Ennis & Hawley, Boise, for Respondents Boise–Kuna, New York, Wilder, and Big Bend Irrigation Districts. Did not participate.

Patrick D. Brown, Twin Falls, for Respondent Hagerman Water Right Users, Inc. Did not participate.

McDEVITT, Justice.*

In the Snake River Basin Adjudication (SRBA), the Director of the Idaho Department of Water Resources (IDWR or Director) has the duty of preparing a Director's Report on the Snake River water system. I.C. § 42–1411 (1996). On November 28, 1995, IDWR submitted the Amended Director's Report for Basin 57, which is one of three Basins that have been designated as test Basins. The issue raised in this case is whether each of the test Basins, (Director's Reporting Areas 1 (Basin 34), 2 (Basin 36), and 3 (Basin 57)), should be subject to general provisions regarding firefighting purposes, irrigation use, and conjunctive management.[1]

The SRBA district court found that the general provisions were not necessary for the definition of the rights or for the efficient administration of the water rights and ruled that the general provisions would not be included in the decrees issued in the SRBA. This Court granted appellants' motion for permission to appeal the SRBA district court's decision pursuant to Idaho Appellate Rule 12.

## I.

### FACTS AND PRIOR PROCEEDINGS

On September 5, 1995, A & B Irrigation District, among other parties (collectively referred to as appellants), filed a motion to designate basin-wide issue number 5 with the SRBA district court. Appellants requested the SRBA district court resolve all objections to the inclusion of general provisions and other statements in the Amended Director's Reports for Basins 34, 36, and 57.

On December 19, 1995, a hearing on the designation of basin-wide issue number 5 was held. On December 21, 1995, the SRBA district court entered an order designating basin-wide issue number 5. The SRBA district court described basin-wide issue number 5 as whether the general provisions were necessary for the definition of the rights or for the efficient administration of the water rights. The SRBA district court considered the general provisions 3, 5, and 6 in Basin 34, the general provisions 1, 2, and 3 in Basin 36, and the general provisions in 1, 3, and 4 in

---

* Justice McDevitt participated in this opinion prior to his resignation.

1. The conjunctive management issue has been ordered to be reargued. Consequently, this opinion does not address conjunctive management.

Basin 57.[2] The SRBA district court found that general provision 2, involving Reynolds Creek, was particularly unique to Basin 57 and referred general provision 2 to a Special Master.[3]

On March 12, 1996, the SRBA district court heard oral argument regarding the issue of whether the general provisions were legally necessary for the definition of the rights or for the efficient administration of the water rights. The SRBA district court bifurcated the proceedings, over the objection of the parties, considering first whether the general provisions were legally necessary without hearing factual evidence supporting the inclusion or exclusion of the general provisions.

The SRBA district court entered a memorandum decision and order regarding basin-wide issue number 5 on April 26, 1996. The SRBA district court ruled that the general provisions 3, 5, and 6 for Basin 34, the general provisions 1, 2, and 3 for Basin 36, and the general provisions 1, 3, and 4 for Basin 57, "shall not be decreed in the SRBA and they are, therefore, struck from the Director's Reports and are not subject to any further court action in the test Basins." This Court granted appellants' motions for permission to appeal and appellants filed notices of appeal.

## II.

### DEFINITION OF A GENERAL PROVISION

A general provision is not defined by the SRBA code. The SRBA district court interpreted I.C. § 42–1411(3) as requiring a general provision to directly apply to every water right. The SRBA district court focused upon the language in I.C. § 42–1411(3) that states "[t]he director may include such general provisions in the director's report, as the director deems appropriate and proper, to define and to administer all water rights."

■ A general provision is a provision that is included in a water right decree regarding the administration of water rights that applies generally to water rights, is not an element of the water right, or is necessary for the efficient administration of the water

rights decreed. Administering a water right is not a static business. While some administrative provisions would clearly apply to a certain type of water right in certain circumstances other administrative provisions clearly would not apply to a certain type of water right and every circumstance.

■ Idaho Code § 42–1412(6) provides that "[t]he decree shall also contain an express statement that the partial decree is subject to such general provisions necessary for the definition of the rights or for the efficient administration of the water rights." I.C. § 42–1412 (1996). We conclude that a general provision is an administrative provision that generally applies to water rights but it need not apply to every water right.

■ Idaho Code § 42–1412(6) instructs that a general provision should be included in a water right decree if such general provision is "necessary" to define or efficiently administer water rights. Whether a general provision is "necessary" depends upon the specific general provision at issue and involves a question of fact, (defining the proposed general provision and the circumstances of its application), and a question of law, (determining whether the general provision facilitates the definition or efficient administration of water rights in a decree). A general provision is "necessary" if it is required to define the water right being decreed or to efficiently administer water rights in a water right decree.

## III.

### A PROVISION REGARDING FIREFIGHTING GENERALLY APPLIES TO WATER RIGHTS AND IS NECESSARY FOR THE EFFICIENT ADMINISTRATION OF WATER RIGHTS

■ The SRBA district court found that the proposed general provision regarding firefighting was not a general provision and struck it from the Director's Amended Report. We conclude that a provision regarding firefighting is an appropriate general provision and should be included as a general provision in the decrees issued in the SRBA.

---

2. The proposed general provisions are attached as Appendix A to this opinion.

3. General provision 2 for Basin 57 is designated as basin-wide issue 5A.

The proposed provision regarding firefighting generally applies to all water rights. The proposed provision provides that firefighting purposes is an alternate use for which *any* water right may be used, and firefighting is recognized as a lawful use of water with or without a water right.

The proposed provision regarding firefighting is necessary to define water rights being decreed. The firefighting provision recognizes a lawful use of water "with or without a water right" and describes the circumstances in which water may be used:

> to extinguish an existing fire on private or public lands, facilities, or equipment; to prevent an existing fire from spreading to private or public lands, facilities, or equipment within the vicinity of and endangered by an existing fire; and by firefighting personnel engaged in fighting an existing fire.

The proposed firefighting provision also instructs that "[f]irefighting purposes does not include the use of water to prevent a fire from occurring in the future, the use of water for domestic purposes in regularly maintained firefighting stations, or the storage of water for fighting future fires."

A general provision allowing for the use of water with or without a water right for the limited and beneficial use of firefighting is necessary to define or efficiently administer water rights. We hold that as a matter of law the proposed provision regarding firefighting should be included as a general provision in the decrees issued in the SRBA.

## IV.

### A PROVISION DEFINING A WATER RIGHT AS FOR "IRRIGATION SEASON" CAN BE STATED AS AN ELEMENT OF A WATER RIGHT **

The SRBA district court found that a general provision regarding early and late season irrigation was not necessary to administer irrigation water rights and determined a general provision regarding early and late season irrigation would not be included in the decrees issued in the SRBA. The SRBA

** Editor's Note: Part IV was withdrawn by the Opinion on Reargument and Rehearing. See p.

district court ruled that all decrees for irrigation in the SRBA shall set the period of use as the "irrigation season." We agree that a general provision regarding early and late season irrigation need not be included in the decrees issued in the SRBA.

A general provision is not an essential element of a water right. Idaho Code § 42–1411(2) mandates the Director "shall determine the following elements, to the extent the director deems appropriate and proper, to define and administer the water rights acquired under state law: ... (g) the period of the year when water is used for such purposes." Idaho Code § 42–1412(6) states that "[t]he decree shall contain or incorporate a statement of each element of a water right as stated in subsections (2) and (3) of section 42–1411, Idaho Code...."

We agree with the SRBA district court and the Director that due to year to year changes in climatic conditions and variability in each area's soil type, the period of use for irrigation water rights should not be defined as a fixed period of use. The period of use for irrigation is the irrigation season. The irrigation season is determined by the irrigator based upon when water is available, needed, and can be put to beneficial use for that purpose. No irrigator has the right to waste water. The Director has the administrative duty and authority to annually determine the beginning and ending of an irrigation season and to prevent wasteful use of water by irrigators.

The period of the year when water is used for irrigation purposes shall be determined annually by irrigators subject to the authority of the Director and any reasonable rules and regulations the Director may adopt.

## V.

### INCIDENTAL STOCK WATERING AS A GENERAL PROVISION IS NOT NECESSARY TO DEFINE A WATER RIGHT OR FOR THE EFFICIENT ADMINISTRATION OF A WATER RIGHT

■ The SRBA district court found that the provision regarding incidental stock wa-

581, *infra*.

ter would not be included as a general provision in the decrees issued in the SRBA. We agree.

Idaho Code § 42–1411(2) instructs the Director to determine the element of purpose of use, I.C. § 42–1411(2)(f), and to include "such remarks and other matters as are necessary for definition of the right, for clarification of any element of a right, or for administration of the right by the director," I.C. § 42–1411(2)(k).

Incidental stock watering is defined by the Director as stock water that

> is not specifically included for a water right that includes irrigation, a portion of the quantity described for irrigation use can be diverted and used from the same point of diversion and at the same place of use as the irrigation use for purposes of maintaining a reasonable water supply for stock watering during the period of use for irrigation.

Stock watering is included as a beneficial use of water under I.C. §§ 42–111, 42–113, and 42–114. The Director has the authority to define incidental stock watering regulations for the administration of a water right. A general provision regarding incidental stock watering is not necessary for the definition of the rights or for the efficient administration of the water rights issued in the SRBA.

## VI.

### USE OF "EXCESS WATER" CANNOT BE DECREED AS A WATER RIGHT

■ The SRBA district court found that the provision regarding excess water would not be included as a general provision in the decrees issued in the SRBA. The SRBA district court determined that the provision regarding excess water was not legally necessary. We agree with the SRBA district court that "excess water" or "high flow," (a term used by the parties to describe the same water), is not subject to a water right. Excess flow is not subject to definition in terms of quantity of water per year, which is

essential to the establishment and granting of a water right.

■ The provision regarding excess water is not an element of a water right since excess water inherently relates to water that has not been decreed. Consequently there cannot be a prior relation to excess water. A general provision concerning excess water would not define a water right or be necessary to administer a water right and therefore is not appropriate.

## VII.

### CONCLUSION

We hold that a provision regarding firefighting should be included as a general provision in regulations and the period of use for irrigation water rights as the irrigation season.*** The use of excess water cannot be decreed as a water right or a general provision. No costs are awarded on appeal.

JOHNSON, Justice, concurring and dissenting.

I concur in part I (Facts and Prior Proceedings), part IV (A Provision Defining a Water Right as for "Irrigation Season" Can Be Stated as an Element of a Water Right), part V (Incidental Stock Watering as a General Provision Is Not Necessary to Define a Water Right or for the Efficient Administration of a Water Right), part VI (Use of "Excess Water" Cannot Be Decreed as a Water Right), and part VII (Conclusion) of the Court's opinion. I respectfully dissent from parts II (Definition of a General Provision) and III (A Provision Regarding Firefighting). In my view, the SRBA district court correctly decided these issues. The portions of the conclusion contained in the SRBA district court's decision quoted below succinctly express my view of the correct resolution of the issues decided in the parts from which I dissent:

> None of the proposed general provisions on firefighting, irrigation use ... constitute statutorily recognized general provisions because none applies [to] all water

---

*** Editor's Note: The conclusion was amended by                    Opinion of Reargument and Rehearing.

rights recommended in the Director's Report.

Firefighting cannot be implied as a purpose of use included in irrigation uses. It is not necessary to define irrigation rights nor is it necessary for their administration.

SILAK, Justice, concurring and dissenting.

I concur fully in Parts I, II, III, IV, and V of the Court's opinion. However, I must respectfully dissent in part from Part VI of the Court's opinion. I agree with the portion of Part VI in which the Court holds that "excess" or "high flow" water is not subject to a water right. However, rather than ruling as a matter of law that "excess" water is not necessary for the efficient administration of water rights, I would remand this portion of the appeal for a factual determination regarding the provision's necessity. In Part II of this opinion, we hold that "[w]hether a general provision is 'necessary' depends upon the specific general provision at issue and involves a question of fact, (defining the proposed general provision and the circumstances of its application), and a question of law, (determining whether the general provision facilitates the definition or efficient administration of water rights in a decree)." In my view, the question of fact has not been resolved. Administration of "excess" water is a long standing practice in Idaho. The parties should have been permitted to adduce proofs on that historic use so that the necessity of including a general provision could be more fully assessed. Thus, I would remand the matter for a factual determination consistent with this opinion.

DRESCHER, J. Pro Tem., concurs in Justice SILAK's opinion.

SCHROEDER, J., concurs in result as to part V.

I concur in Parts I, II, III, IV and VI. I concur in the result in Part V.

## APPENDIX A

## AMENDED GENERAL PROVISIONS ON FIREFIGHTING PURPOSES FOR BASINS 34, 36 AND 57

### BASIN 34

5. FIREFIGHTING PURPOSES

a. Firefighting purposes is an alternate use for which any water right may be used, and firefighting is recognized as a lawful use of water with or without a water right.

b. Firefighting purposes means the use of water in times of emergency: to extinguish an existing fire on private or public lands, facilities, or equipment; to prevent an existing fire from spreading to private or public lands, facilities, or equipment within the vicinity of and endangered by an existing fire; and by firefighting personnel engaged in fighting an existing fire. Firefighting purposes does not include the use of water to prevent a fire from occurring in the future, the use of water for domestic purposes in regularly maintained firefighting stations, or the storage of water for fighting future fires.

### BASIN 36

2. FIREFIGHTING PURPOSES

a. Firefighting purposes is an alternate use for which any water right may be used, and firefighting is recognized as a lawful use of water with or without a water right.

b. Firefighting purposes means the use of water in times of emergency: to extinguish an existing fire on private or public lands, facilities, or equipment; to prevent an existing fire from spreading to private or public lands, facilities, or equipment within the vicinity of and endangered by an existing fire; and by firefighting personnel engaged in fighting an existing fire. Firefighting purposes does not include the use of water to prevent a fire from occurring in the future, the use of water for domestic purposes in regularly maintained firefighting stations, or the storage of water for fighting future fires.

### BASIN 57

1. FIREFIGHTING PURPOSES

a. Firefighting purposes is an alternate use for which any water right may be used, and firefighting is recognized as a lawful use of water with or without a water right.

b. Firefighting purposes means the use of water in times of emergency: to extinguish

an existing fire on private or public lands, facilities, or equipment; to prevent an existing fire from spreading to private or public lands, facilities, or equipment within the vicinity of and endangered by an existing fire; and by firefighting personnel engaged in fighting an existing fire. Firefighting purposes does not include the use of water to prevent a fire from occurring in the future, the use of water for domestic purposes in regularly maintained firefighting stations, or the storage of water for fighting future fires.

## APPENDIX B

### AMENDED GENERAL PROVISIONS ON IRRIGATION USE IN BASIN 34, 36 AND 57

### BASIN 34

6. IRRIGATION USE. Water rights or portions of water rights shown with a purpose of use for irrigation include the following:

a. Incidental stock water. When stock water is not specifically included for a water right that includes irrigation, a portion of the quantity described for irrigation use can be diverted and used from the same point of diversion and at the same place of use as the irrigation use for purposes of maintaining a reasonable water supply for stock watering during the period of use for irrigation.

b. Early-season irrigation and late-season irrigation. The period of use of rights or portions of rights from the Big Lost River for irrigation purposes may begin as early as April 20 and continue as late as October 31 if water is reasonably necessary for irrigation. In addition, diversion of water from surface water tributaries to the Big Lost River under rights or portions of rights for irrigation use can occur either before or after the period of use for irrigation described in the water right where:

　i. the water so diverted is applied to beneficial use for irrigation, including incidental stock watering,

　ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subse-

quent to this decree), existing at the time of diversion that are within their period of use can be satisfied,

　iii. no element of the water right, other than season of use, is exceeded or violated by the early-season or late-season use,

　iv. the diversion and use of water does not conflict with the local public interest, and

　v. the irrigation water user utilizing this provision assumes all risk that the criteria of this general provision are satisfied.

c. Diversion of additional flows. A quantity of surface water in addition to the quantity of surface water described for irrigation use can be diverted for irrigation of the described place of use so long as:

　i. the waters so diverted is applied to beneficial use for irrigation,

　ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subsequent to this decree), existing at the time of diversion that are within their period of use can be satisfied,

　iii. no element of the water right, other than quantity, is exceeded or violated by the diversion of additional flows,

　iv. the diversion and use of water does not conflict with the local public interest, and

　v. the irrigation water user utilizing this general provision assumes all risk that the criteria of this general provision are satisfied.

### BASIN 36

3. IRRIGATION USE. Water rights or portions of water rights shown with a purpose of use for irrigation include the following:

a. Incidental stock water. When stock water is not specifically included for a water right that includes irrigation, a portion of the quantity described for irrigation use can be diverted and used from the same point of diversion and at the same place of use as the irrigation use for purposes of maintaining a reasonable water supply for stock watering during the period of use for irrigation.

b. Early-season irrigation and late-season irrigation. The diversion of rights or portions of rights for irrigation use either before or after the period of use for irrigation described in the water right can occur as long as:

i. the water so diverted is applied to beneficial use for irrigation, including incidental stock watering,

ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subsequent to this decree), existing at the time of diversion that are within their period of use can be satisfied,

iii. no element of the water right, other than season of use, is exceeded or violated by the early-season or late-season use,

iv. the diversion and use of water does not conflict with the local public interest, and

v. the irrigation water user utilizing this provision assumes all risk that the criteria of this general provision are satisfied.

c. Diversion of additional flows. A quantity of surface water in addition to the quantity of surface water described for irrigation use can be diverted for irrigation of the described place of use so long as:

i. the waters so diverted is applied to beneficial use for irrigation,

ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subsequent to this decree), existing at the time of diversion that are within their period of use can be satisfied,

iii. no element of the water right, other than quantity, is exceeded or violated by the diversion of additional flows,

iv. the diversion and use of water does not conflict with the local public interest, [and]

v. the irrigation water user utilizing this general provision assumes all risk that the criteria of this general provision are satisfied.

3. IRRIGATION USE. Water rights or portions of water rights shown with a purpose of use for irrigation include the following:

a. Incidental stock water. When stock water is not specifically included for a water right that includes irrigation, a portion of the quantity described for irrigation use can be diverted and used from the same point of diversion and at the same place of use as the irrigation use for purposes of maintaining a reasonable water supply for stock watering during the period of use for irrigation.

b. Early-season irrigation and late-season irrigation. The diversion of rights or portions of rights for irrigation use either before or after the period of use for irrigation described in the water right can occur as long as:

i. the water so diverted is applied to beneficial use for irrigation, including incidental stock watering,

ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subsequent to this decree), existing at the time of diversion that are within their period of use can be satisfied,

iii. no element of the water right, other than season of use, is exceeded or violated by the early-season or late-season use,

iv. the diversion and use of water does not conflict with the local public interest, and

v. the irrigation water user utilizing this provision assumes all risk that the criteria of this general provision are satisfied.

c. Diversion of additional flows. A quantity of surface water in addition to the quantity of surface water described for irrigation use can be diverted for irrigation of the described place of use so long as:

i. the waters so diverted is applied to beneficial use for irrigation,

ii. all water rights diverting from the same or a common source, regardless of priority (now existing or developed subsequent to this decree), existing at the time

of diversion that are within their period of use can be satisfied,

iii. no element of the water right, other than quantity, is exceeded or violated by the diversion of additional flows,

iv. the diversion and use of water does not conflict with the local public interest,

v. the irrigation water user utilizing this general provision assumes all risk that the criteria of this general provision are satisfied, and

vi. diversion of additional flows in the Reynolds Creek water system must also comply with general provision 3 of this report.

## APPENDIX C

### AMENDED GENERAL PROVISIONS ON CONJUNCTIVE MANAGEMENT FOR BASINS 34 AND 36

#### BASIN 34

3. CONJUNCTIVE MANAGEMENT OF GROUND AND SURFACE WATER RIGHTS WITHIN BASIN 34.

a. Some ground water rights in the list of water rights are described as being administered separate from the Big Lost River and its tributaries. All other ground water rights not so described will be administered as part of the Big Lost River and tributaries.

#### BASIN 36

1. ADMINISTRATION OF BASIN 36 RELATIVE TO THE SNAKE RIVER. The Eastern Snake River Plain Aquifer, the springs tributary to the Snake River or other surface tributaries, and surface tributaries to the Snake River in Basin 36 downstream from the Milner Dam are hydrologically connected to varying degrees.

The perched aquifer in the Rupert area is tributary both to the Snake River upstream from the Milner Dam and to the Eastern Snake River Plain Aquifer. Basin 36 water rights for surface and ground water, and Snake River water rights will be administered conjunctively, pursuant to law, with

1. See footnote 1, *supra*, slip op. at p. 570.

due consideration as to actual impacts of ground water diversions on senior water rights.

## APPENDIX D

### ORIGINAL GENERAL PROVISION ON CONJUNCTIVE MANAGEMENT FOR BASIN 57.

4. GENERAL PROVISION 4: ADMINISTRATION OF BASIN 57 AND SNAKE RIVER BASIN. Information currently available to IDWR does not provide a complete understanding of the interrelationship between water sources in Basin 57 and the Snake River; however, it does indicate that water sources in Basin 57 do not provide a significant amount of water to the Snake River. Therefore, the water sources in Basin 57 are not subject to administration as part of the Snake River at this time, but may become subject to such administration if the Director determines that such administration is necessary to protect senior rights from the Snake River.

**OPINION ON REARGUMENT OF CONJUNCTIVE MANAGEMENT ISSUE AND ON REHEARING OF IRRIGATION SEASON ISSUE**

WALTERS, Justice.

This portion of the opinion follows resubmission of two of the questions raised originally in the appeal in Basin-wide Issue no. 5. The first question, ordered *sua sponte* by the Court for reargument,[1] is whether the adjudications in Basins 34, 36, and 57 should include general provisions proposed by the Director regarding conjunctive management. The second question concerns the Court's determination in Part IV that all decrees for irrigation in the SRBA shall set the period of use as the "irrigation season" and that general provisions regarding early and late season irrigation need not be included in the decrees. This latter question was submitted for reconsideration upon grant of a petition for rehearing filed by the State. The respective general provisions are found in Appendix A attached to the opinion filed on October 3, 1997.

We conclude that the district court's decision not to include the general provisions in question in its decrees must be vacated, and we remand the case for further proceedings.

## ISSUES

The issues thus presented are:

1. Whether general provisions regarding interconnection and conjunctive management of surface and ground water in Basins 34, 36 and 57 are necessary to define or to efficiently administer the water rights decreed by the SRBA district court.

2. Whether water rights for irrigation shall set the period of use as the "irrigation season" or whether such rights must be for a specific date subject to general provisions regarding early and late season irrigation.

## STANDARD OF REVIEW

■ Whether a general provision from the Director's report should be included in the SRBA decree presents a mixed question of law and fact over which this Court conducts free review. *State v. Nelson,* 131 Idaho 12, 951 P.2d 943 (1998). This Court previously has held that, "A general provision is a provision that is included in a water right decree regarding the administration of water rights that applies generally to water rights, is not an element of the water right, or is necessary for the efficient administration of the water rights decreed." Op. at p. 571. A general provision is an administrative provision that generally applies to water rights but it need not apply to every water right. Op. at p. 571. Further,

Idaho Code § 42–1412(6) instructs that a general provision should be included in a water right decree if such general provision is "necessary" to define or efficiently administer water rights. Whether a general provision is "necessary" depends upon the specific general provision at issue and involves a question of fact, (defining the proposed general provision and the circumstances of its application), and a question of law, (determining whether the general provision facilitates the definition or efficient administration of water rights in a

decree). A general provision is "necessary" if it is required to define the water right being decreed or to efficiently administer water rights in a water right decree. *Id.*

## DISCUSSION

### I.

**Whether General Provisions Regarding Interconnection and Conjunctive Management are Necessary to Define or to Efficiently Administer the Water Rights Decreed by the SRBA District Court.**

The issue submitted to the district court was whether the conjunctive management general provisions found in general provision 3 in Basin 34, general provision 1 in Basin 36, and general provision 4 in Basin 57 should be included in the adjudication decree. The district court determined not to adopt the proposed general provisions, expressing the reason that the proposals were not "general" because they did not apply to all rights recommended in the Director's respective reports and also for the reason that general provisions on interconnection were unnecessary to the administration of water rights by the Director because they would overlap the rules for conjunctive administration adopted by the IDWR pursuant to the Idaho Administrative Procedures Act. IDAPA 37.03.11 (Oct.7, 1994).

When the district court reached its decision, it was without the benefit of this Court's opinion which defined a general provision and held that general provisions need not apply to every water right. Accordingly, we conclude at the outset that the district court should be given another opportunity to consider the question of including the proposed general provisions in the decrees issued in each of the subject Basins without regard to the fact that the provisions may not apply to all of the rights recommended in the Director's respective reports.

Furthermore, and as recognized by the district court, it is not in contest in the SRBA proceedings that most, if not all, water in the Snake River system is interconnected. The court observed that general interconnection of all water in the Snake River system is well

settled, and that "all water under the jurisdiction of the SRBA Court is interconnected, unless the party claiming otherwise proves by a preponderance of the evidence that the water is from a separate source." The dispositive issue, therefore, is whether inclusion of general provisions on conjunctive management of the interconnected waters in Basins 34, 36 and 57 is necessary for the definition or for the efficient administration of the water rights to be decreed in any of those reporting areas. As demonstrated by Appendix A, each of those areas has differing conjunctive management provisions.

Conjunctive management combines legal and hydrologic aspects of the diversion and use of water under water rights arising both from surface and from ground water sources. Proper management in this system requires knowledge by the IDWR of the relative priorities of the ground and surface water rights, how the various ground and surface water sources are interconnected, and how, when, where and to what extent the diversion and use of water from one source impacts the water flows in that source and other sources. In 1994, an interim legislative committee charged with reviewing the progress of the SRBA noted the pendency of studies on conjunctive management investigating the effect of ground water pumping on natural springs that flowed directly into the Snake River. The committee reported:

> Conjunctive management of ground water and surface water rights is one of the main reasons for the commencement of the Snake River Basin Adjudication. In fact, the Snake River Basin Adjudication was filed in 1987 pursuant to I.C. § 42–1406A, in large part to resolve the legal relationship between the rights of the ground water pumpers on the Snake River Plain and the rights of Idaho Power at its Swan Falls Dam. *Idaho Power Co. v. State,* 104 Idaho 575, 588[, 661 P.2d 741, 754] (1983); *In re Snake River Basin Water System,* 115 Idaho 1, 2–3[, 764 P.2d 78, 79–80] (1988).
>
> Historically, conjunctive management has not occurred in Idaho, especially between the Snake River Plain Aquifer and the Snake River. To conjunctively manage these water sources a good under-

standing of both the hydrological relationship and legal relationship between ground and surface water rights is necessary.

Although these issues may need to be resolved by general administrative provisions in the adjudication decrees, they generally relate to two classic elements of a water right—its source and priority. The SRBA should determine the ultimate source of the ground and surface water rights being adjudicated. This legal determination must be made in the SRBA. The IDWR should provide recommendations to the SRBA District Court on how it should do so. Further, the SRBA District Court must determine the relative priority between surface and ground water rights.

If the SRBA proceeds and these issues are not addressed, a major objective for the adjudication will not have been served. Conjunctive administration will be set back, and another generation of ground and surface water users will be uncertain regarding their relationship to each other.

1994 INTERIM LEGISLATIVE COMMITTEE REPORT ON THE SNAKE RIVER BASIN ADJUDICATION, p. 36–37.

While the district court noted the adoption by the IDWR of IDAPA 37.03.11 setting forth the department's "Rules for Conjunctive Management of Surface and Ground Water Resources," these rules do not necessarily overlap the SRBA proceedings. They do not provide for administration of interconnected surface and ground water rights in the SRBA, nor do they deal with the interrelationship of water rights within the various Basins defined by the Director and the SRBA district court, and they do not deal with the interrelationship of those Basins to each other and to the Snake River in the SRBA proceeding. The Rules adopted by the IDWR are primarily directed toward an instance when a "call" is made by a senior water right holder, and do not appear to deal with the rights on the basis of "prior appropriation" in the event of a call as required. *See, e.g., Musser v. Higginson,* 125 Idaho 392, 871 P.2d 809 (1994). Here, of course, the Director's proposed conjunctive management provisions were designed to address within the SRBA the ground water and sur-

face water interconnections and impacts relating to three specific Basins. The general provisions proposed for each of the Basins were not identical, but were distinctively crafted evidently due to the unique characteristics of each of the individual reporting areas.

We conclude that the order of the district court denying the inclusion of general provisions dealing with interconnection and conjunctive management of surface and ground water rights in Basins 34, 36 and 57 must be vacated and the matter remanded to the district court for the purpose of holding an evidentiary hearing to determine factually whether the proposed general provisions for each of those areas is necessary either to define or to efficiently administer the water rights decreed by the court in the adjudication process. Because each of the proposed general provisions regarding interconnection and conjunctive management in Basins 34, 36 and 57 is separate and distinct, each Basin's conjunctive management provision must be discretely considered in reaching the factual determination whether the respective general provision is necessary either to define or to more efficiently administer water rights in that particular Basin. I.C. § 42–1412(6); *In re SRBA Case No. 39576,* 128 Idaho 246, 262, 912 P.2d 614, 630 (1995).

## II.

**A. Whether the Term "Irrigation Season" Should Be Specified as the Period of Use for Irrigation Water Rights.**

The general provisions relating to irrigation use were also proposed by the Director in reporting the test areas known as Basin 34, Basin 36 and Basin 57. *See* Appendix A. With a slight exception applicable only to tributaries to the Big Lost River in Basin 34, the general provision concerning the irrigation topic in issue in this case otherwise is identical for each Basin.

The district court ruled that general provisions pertaining to early and late season irrigation use need not be included in the SRBA's partial decree. As with its determination on the conjunctive management issue, the district court held that the irrigation

provisions were not "general" because they failed to apply to all water rights. Instead, the court held that all decrees for irrigation in the SRBA shall set the period of use as the "irrigation season," and that "it is an administrative function vested in the sound discretion of the Director to ensure that irrigators do not waste water by putting it to use before or after the irrigation season." The court decided that because the period of use for irrigation varies from year to year and region to region in the state, "a fixed period of time for the season of use does not reflect reality nor can it be proved with the certainty required for a decree which will have application in perpetuity." Accordingly, the district court concluded that "The proper solution and the one required as a matter of law, is that in the SRBA all irrigation rights shall be decreed with one and the same period of use: the irrigation season." Consequently, said the court, "There is no necessity for the court to enter general provisions for early and late season irrigation use."

On the initial appeal, in Part IV (slip op. p. 7–8) this Court agreed with the district court's decision that all decrees for irrigation in the SRBA shall set the period of use as the "irrigation season." However, on rehearing, we have concluded that this Court's holding that simply specifying the period of use of water for irrigation as the "irrigation season," conflicts with the plain meaning of I.C. §§ 42–201(1)(c), 42–1409(1)(g), 42–1411(2)(g), 42–1411A(13), and 42–1412(6), and the long-standing interpretations of these sections by IDWR. The district court's approach is fundamentally at odds with over 32,000 irrigation water rights claimed in the SRBA which contain specifically fixed periods of use.

Idaho Code § 42–202(1), which sets forth the elements required in an application for a water right license, requires the "period of year during which the water is to be used" for each purpose for which the water is sought. Prior to the enactment of I.C. § 42–202(1) in 1967, this Court established that it was within the power of the IDWR to impose a specific period of use on water rights. *Dunn v. Boyd,* 46 Idaho 717, 271 P. 2 (1928); *Uhrig v. Coffin,* 72 Idaho 271, 240 P.2d 480

(1952); *Devil Creek Ranch v. Cedar Mesa Reserv.*, 126 Idaho 202, 879 P.2d 1135 (1994). However, in 1967, I.C. § 42–202(1)(c) was amended to require an applicant for permission to appropriate water to declare "[t]he nature of the proposed use or uses *and the period of year during which water is to be used for such use or uses.*" 1967 Idaho Sess. Laws, ch. 374, at p.1081 (emphasis supplied). Since its enactment in 1967, the IDWR has interpreted this section as requiring the "period of use" to be described by a specific beginning and ending date, not merely by reference to a "season" for the use. As a result, each of the 18,175 irrigation water right licenses issued since May, 1967, has included a period of use in terms of a specific beginning and ending date.

Thereafter, in 1969, conforming amendments were made to the adjudication statutes.[2] For instance, I.C. § 42–1409(1)(g) requires each water right claim to set forth the period of the year when water is used or necessary for each purpose claimed. Idaho Code § 42–1411(2)(g) requires the Director to report the period of the year when water is used for the purposes claimed. These elements described in the Director's report must be included in the SRBA court's decree pursuant to I.C. § 42–1412(6). In addition, I.C. § 42–1411A(13) contains a parallel provision with regard to federal reserved water rights, requiring the SRBA court to incorporate in its decree of federal reserved water rights each element of a water right listed in § 42–1409(1), which includes the period of the year in which the right is used.

■ Prior to the enactment of these sections, which require the period of the year when a water right is to be used, the period of use was the "irrigation season." However, to now determine that the period of use is the "irrigation season" would render meaningless the 1967 and 1969 amendments. The courts have a duty not to deprive any statutory provisions of their meaning. *See George W. Watkins Family v. Messenger*, 118 Idaho 537, 797 P.2d 1385 (1990). Applying the

statutes as written, this Court holds that I.C. §§ 42–201(1)(c), 42–1409(1)(g), 42–1411(2)(g), 42–1411A(13), and 42–1412(6) require that the period of use for each irrigation water right be identified by specific dates, as the Director has previously done for more than thirty years, and not merely by reference to an "irrigation season."

Accordingly, we withdraw our previous holding in Part IV, slip op. p. 7–8, that the period of use shall be the "irrigation season." Instead, we hold that each irrigator's water right shall be decreed with a specific period of use setting forth a beginning date and an ending date, as previously adhered to by the IDWR. The determination of the appropriate period of use for each irrigation water right is a factual question to be resolved by the district court on remand.

**B. Whether General Provisions Regarding Early and Late Season of Use are Necessary to Define or Efficiently Administer the Water Rights Decreed by the SRBA District Court.**

Inasmuch as we are withdrawing our previous decision on the question of the period time for use of irrigation water rights and thus vacate the district court's order holding that the period of use is the "irrigation season," we must now revisit the issue of whether an early and late season general provision is necessary for the definition or efficient administration of the water rights decreed.

The period of use for irrigation water rights varies from right to right as a result of the issuance of permits and decrees over the many years. Some prior decrees set the period of use as the "irrigation season," some set a fixed period of use by date, while others set a different fixed period of use. Given this multiplicity in variety of decreed, licensed and permitted periods of use for irrigation rights, the Director maintains that it is not possible to absolutely administer the period of use for irrigation rights fairly and

---

**2.** In 1969, Chapter 14, Title 42 of the Idaho Code (the adjudication statute) was amended to require, pursuant to I.C. § 42–1409, claimants to include in their claims "the period of year when water is used for each purpose," and pursuant to

I.C. § 42–1410, to require the court's decree in every case to "declare as to the water rights adjudged to each party, the ... season of use." 1969 Idaho Sess. Laws, ch. 279, at pp. 830–32.

consistently. Furthermore, the varying periods of use do not allow the flexibility necessitated by the changes from year to year in climatic conditions and the variability of regional area's soil types. To resolve this ongoing dilemma, the Director proposed general provisions for early and late season use for irrigation in order to administer the multiple periods of use for irrigation rights.

The district court agreed with the Director that "given the inability of the Director to fairly and reasonable administer the multiple periods of use for irrigation rights, the decrees entered by the SRBA cannot be administered as the situation presently exists." However, the district court held that the Director's proposal for general provisions governing early and late season irrigation use was not needed because such general provisions were unnecessary to define and administer *all* water rights. Instead, to resolve the Director's perplexity regarding the multiple periods of use for irrigation rights, the district court concluded that the period of use for irrigation should be designated simply as the "irrigation season."

We have concluded that the period of use for irrigation must be identified by reference to specific dates, setting forth fixed periods of use for irrigation water rights, as already administered by the IDWR and the Director. This conclusion, however, does not perforce resolve the Director's quandary regarding early and late season periods of use for irrigation caused by climatic and regional variations. Accordingly, we remand the case to the SRBA district court for factual findings to determine whether early and late season general provisions are necessary to define or to efficiently administer irrigation water rights.

## CONCLUSION

We reiterate that general provisions proposed by the Director do not have to apply to all water rights within the Basin to which they may relate. We remand this proceeding to the SRBA district court for the purpose of holding an evidentiary hearing to determine whether the conjunctive management general provisions proposed for Basins 34, 36 and 57 are necessary to define or to administer water rights efficiently in any of those particular Basins. We vacate our earlier decision that the period of use for irrigation water rights is the irrigation season, conclude that irrigation water rights shall be decreed with a specific period of use for each water right, and remand to the SRBA district court the factual question of the appropriate period of use for each irrigation water right. We also remand for a factual determination as to whether general provisions regarding early and late season use are necessary for the efficient administration of a water right or are necessary to define a water right.

No costs are awarded on appeal.

SILAK and SCHROEDER, JJ., and DRESCHER, J. Pro Tem., concur.

JOHNSON, Justice, dissenting.

I respectfully dissent. In my view, the district court correctly resolved the issues discussed in the Court's opinion issued following reargument of the conjunctive management issue and rehearing of the irrigation season issue.

In the portion of its order that resolved the conjunctive management issue, the district court said:

Findings on the nature and extent of the interconnection in order to determine the impact of one right on another, is a determination reserved for the time when a call is made on a source or where the Director determines, as a part of his statutory duties, to administer conjunctively. The varying degrees of interconnection may be determined by resolving such issues as the timing and amount of impacts, distances, local hydrology, aquifer characteristics, spatial variation, groundwater levels, hydraulic gradients, aquifer boundaries, confining layers, stream bed hydraulic conductivity and the timing and amount of return flows. Then the issue of how to respond to a call or the necessity and manner of IDWR conjunctive administration may be resolved by the Department. These are not issues necessary to determine the statutory elements of a water right; or if they

may be, cannot be decreed as a general provision.

In the portion of its order that resolved the irrigation season issue, the district court said:

> [T]he period of use for irrigation is the irrigation season, unless a specific time period for irrigation is proved. The irrigation season is determined, in the first instance, by the honest determination of the irrigator as to when water is needed and can be beneficially used for that purpose. Nevertheless, no irrigator has the right to waste water by irrigating prior to or after the irrigation season and the law places the duty and authority to circumscribe wasteful uses with the Director of the Department of Water Resources. Unless proved otherwise, the period of use for irrigation is the irrigation season, and it is an administrative function vested in the sound discretion of the Director to ensure that irrigators do not waste water by putting it to use before or after the irrigation season.
>
> In the SRBA, the proposed general provisions for early and late season irrigation recognize the reality that the period of use for irrigation varies from year to year and region to region in the State of Idaho. The need for this general provision exists because a fixed time period for the season of use does not reflect reality nor can it be proved with the certainty required for a decree which will have application in perpetuity. The Director clearly recognizes this problem.
>
> The solution to the problem is not to exacerbate it by continuing to adhere to the fiction that the irrigation season can be decreed as a fixed period. The proper solution and the one required as a matter of law, is that in the SRBA all irrigation rights shall be decreed with one and the same period of use: the irrigation season. There is no necessity for the court to enter general provisions for early and late season use. The water users may determine, in the first instance, the beginning and ending dates of the irrigation season. However, under his duty and authority, the Director of IDWR, may, by adopting rules and regulations based on all the facts required, set the irrigation season on an annual basis.

I would affirm the district court's decision on each of these issues.