154 P.3d 433

AMERICAN FALLS RESERVOIR DIS-
TRICT NO. 2, A & B Irrigation District,
Burley Irrigation District, Minidoka Ir-
rigation District, and Twin Falls Canal
Company, Plaintiffs–Respondents–Cross
Appellants,

and

Rangen, Inc., Clear Springs Foods, Inc.,
Thousand Springs Water Users Associa-
tion, and Idaho Power Company, Inter-
veners–Respondents–Cross Appellants,

v.

The IDAHO DEPARTMENT OF WATER
RESOURCES and Karl J. Dreher, its Di-
rector, Defendants–Appellants–Cross–
Respondents,

and

Idaho Ground Water Appropriators,
Inc., Intervener.

Nos. 33249, 33311, 33399.

Supreme Court of Idaho,
Boise, December 2006 Term.

March 5, 2007.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant Idaho Department of Water Resources; Phillip J. Rassier argued.

Beeman & Associates, P.C., Boise, for appellant City of Pocatello.

Givens Pursley, LLP, Boise, for appellant Idaho Ground Water Appropriators, Inc.; Michael C. Creamer argued.

Arkoosh Law Offices, Chtd., Gooding, for respondent American Falls Reservoir District # 2; C. Thomas Arkoosh argued.

Ling, Robinson & Walker, Rupert, for respondents A & B Irrigation and Burley Irrigation; Roger D. Ling argued.

Fletcher Law Office, Burley, for respondent Minidoka Irrigation District.

Barker Rosholt & Simpson, LLP, Boise and Twin Falls, for respondents Twin Falls Canal Company and Clear Springs Foods, Inc.

May, Sudweeks & Browning, LLP, Boise, for respondent Rangen.

Ringert, Clark Chtd., Boise, for respondents Nampa & Meridian Irrigation District and Thousand Springs Water Users Association; Daniel V. Steenson argued.

TROUT, Justice.

## I.

## NATURE OF THE CASE

This appeal is in response to a district court decision finding the Rules for Conjunctive Management of Surface and Ground Water Resources (CM Rules or Rules) facially unconstitutional based on the court's determination that the Rules lacked certain "procedural components" necessary to the proper administration of water rights under Idaho's prior appropriation doctrine. The Idaho Department of Water Resources (IDWR), together with the Intervenors, Idaho Ground Water Appropriators, Inc. (IGWA), appeal from that decision.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, pursuant to statutory authority found in Idaho Code sections 42–603 and 42–1805, the Director of the Idaho Department of Water Resources (Director), promulgated the CM Rules to provide the procedures for responding to delivery calls "made by the holder of a senior-priority surface or ground water right against the holder of a junior-

priority ground water right in an area having a common ground water supply." IDAPA 37.03.11.001. Thereafter, the CM Rules were submitted to the Idaho Legislature in 1995 pursuant to I.C. § 67–5291. The Legislature has not rejected, amended or modified any part of the Rules and they have, therefore, remained in effect as written. These Rules attempt to provide a structure by which the IDWR can jointly administer rights in interconnected surface water (diverting from rivers, streams and other surface water sources) and ground water sources. It is these CM Rules, their application and their relationship to the provisions in Article XV of the Idaho Constitution which are at the center of the dispute presently before the Court.

The issues initially arose when the Respondents, various irrigation districts and canal companies, submitted a petition for water rights administration and delivery of water (Delivery Call) to the Director in January, 2005, pursuant to the CM Rules. These districts were joined in the administrative proceeding by Intervenors, Rangen, Inc., Clear Springs Foods, Inc., Thousand Springs Water Users Association, and Idaho Power Company (Respondents and Intervenors collectively referred to as American Falls). Some of the entities comprising American Falls hold surface water rights in the Snake River canyon, while others hold storage contracts for space in the Upper Snake River reservoirs. In their January, 2005 Delivery Call, American Falls asked the Director to curtail junior ground water use during the 2005 irrigation season in order to meet the water needs of American Falls. On February 14, 2005, the Director issued an initial order (Initial Order) which, among other things, requested additional information from American Falls for the prior fifteen irrigation seasons relating to: diversions of natural flow, storage water, and ground water; number of water rights holders and their average monthly headgate deliveries; total amount of reservoir storage; amounts of water leased or made available to other users; and number of acres flood or sprinkler irrigated and types of crops planted. American Falls responded with information but also objected to the scope of the information requested.

In the Initial Order, the Director indicated he would make a determination of likely injury after receiving inflow forecasts for the Upper Snake River Basin for the period April 1 through July 1, 2005. Within two weeks of receiving the joint inflow forecast on April 7, 2005, the Director issued a Relief Order, which determined that water shortages were reasonably likely in 2005 and would materially injure American Falls. In the Relief Order, after making extensive findings of fact, the Director made the following conclusions of law which are pertinent to the issues presently before this Court:

. . .

20. Resolution of the conjunctive administration issue lies in the application of two well established principles of the prior appropriation doctrine: (1) the principle of "first in time is first in right" and (2) the principle of optimum use of Idaho's water. Both of these principles are subject to the requirement of reasonable use.

21. "Priority of appropriations shall give the better right as between those using the water" of the state. Art. XV, § 3, Idaho Const. "As between appropriators, the first in time is first in right." Idaho Code § 42–106.

22. "[W]hile the doctrine of 'first in time is first in right' [applies to ground water rights] a reasonable exercise of this right shall not block full economic development of underground water resources." Idaho Code § 42–226.

. . .

36. There currently is no approved and effectively operating mitigation in place to mitigate for injury, if any, to the water rights held by or for the benefit of the members of [American Falls].

. . .

45. Based upon the Idaho Constitution, Idaho Code, the Conjunctive Management Rules, and decisions by Idaho courts, . . . it is clear that injury to senior priority surface water rights by diversion and use of junior priority ground water rights occurs when diversion under the junior rights intercept a

sufficient quantity of water to interfere with the exercise of the senior primary and supplemental water rights for the authorized beneficial use. Because the amount of water necessary for beneficial use can be less than decreed or licensed quantities, it is possible for a senior to receive less than the decreed or licensed amount, but not suffer injury. Thus, senior surface water right holders cannot demand that junior ground water right holders diverting water from a hydraulically-connected aquifer be required to make water available for diversion unless that water is necessary to accomplish an authorized beneficial use.

. . .

45[sic]. Contrary to the assertion of [American Falls], depletion does not equate to material injury. Material injury is a highly fact specific inquiry that must be determined in accordance with IDAPA conjunctive management rule 42. [American Falls] has no legal basis to seek the future curtailment of junior priority ground water rights based on injury alleged by [American Falls] to have occurred in prior years.

. . .

49. The members of [American Falls] should not be required to exhaust their available storage water prior to being able to make a delivery call against the holders of junior priority ground water rights. The members of [American Falls] are entitled to maintain a reasonable amount of carryover storage water to minimize shortages in future dry years pursuant to Rule 42.01 . . . .

The Director identified and ordered the junior ground water rights holders subject to administration pursuant to the American Falls' Delivery Call, to provide "replacement" water sufficient to offset the depletions in American Falls' water supply or face immediate curtailment. Pursuant to I.C. § 42–1701A(3), the Relief Order provided that aggrieved parties were entitled to an administrative hearing on the Relief Order if requested within fifteen days, but that otherwise the Relief Order would become final. Both American Falls and IGWA requested an administrative hearing, which was set by the Director. However, before the hearing could be held, American Falls filed this declaratory judgment action in district court on August 15, 2005. Later, American Falls requested stays and continuances in the hearing schedule and to date, the administrative challenges to the Relief Order remain pending.

American Falls' complaint alleged that the CM Rules are unconstitutional, as applied to their Delivery Call, but also sought a declaration that the CM Rules are void on their face. While the district court largely rejected American Falls' arguments, it did grant summary judgment based on its finding that the CM Rules are facially unconstitutional on a different basis: a lack of "procedural components" of the prior appropriation doctrine that the court viewed as constitutionally mandated. The district court further held that the "reasonable carry-over" provision of CM Rule 42.01.g. is unconstitutional. In its decision, the district court stated that pursuant to I.C. § 67–5278, the actual and "threatened application" of the CM Rules to American Falls' Delivery Call would be considered in its analysis of the Rules' constitutionality.

## III.

### ISSUES ON APPEAL

1. Did the district court properly exercise jurisdiction before all administrative remedies were exhausted?

2. Did the district court err in holding that the CM Rules are facially unconstitutional based on a lack of certain "procedural components"?

3. Are the "reasonable carryover" provisions of Rule 42.01.g. of the CM Rules facially unconstitutional?

4. Are domestic and stock water rights properly exempt?

5. What is the effect of the severability clause?

6. Are the Respondents entitled to attorney's fees?

7. Did the district court improperly revoke its order allowing the City of Pocatello to intervene?

## IV.

### STANDARD OF REVIEW

 In an appeal from an order granting summary judgment, the standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. *State v. Rubbermaid Incorporated*, 129 Idaho 353, 355–356, 924 P.2d 615, 617–618 (1996); *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). Upon review, the Court must liberally construe facts in the existing record in favor of the nonmoving party, and draw all reasonable inferences from the record in favor of the nonmoving party. *Id.; Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991). If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment must be denied. *Bonz*, 119 Idaho at 541, 808 P.2d at 878.

 The constitutionality of a statute or administrative regulation is a question of law over which this Court exercises free review. *Moon v. North Idaho Farmers Ass'n*, 140 Idaho 536, 540, 96 P.3d 637, 641 (2004); *Rhodes v. Indus. Comm'n*, 125 Idaho 139, 868 P.2d 467 (1994). There is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. *Id.* "[A]n appellate court is obligated to seek an interpretation of a statute that upholds it constitutionality." *In Re Bermudes (East. Idaho Reg. Med. Ctr. v. Minidoka County )*, 141 Idaho 157, 159, 106 P.3d 1123, 1125 (2005); *Moon*, 140 Idaho at 540, 96 P.3d at 641. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases. *Id.*

 "Where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Dept. of Ag. v. Curry Bean*, 139 Idaho 789, 792, 86 P.3d 503, 506 (2004).

## V.

### DISCUSSION

At the outset, it is important to commend the lengthy and scholarly opinion written by the district judge in this matter. The issues presented by the parties are extraordinarily complex and are matters of first impression. As exemplified by the Director's 46 page Relief Order and the district judge's 126 page decision, there are no easy answers. The district judge devoted much of his decision to a detailed analysis of Idaho's Constitutional Convention in an effort to better understand what was intended by the drafters of our Constitution in Article XV. While the Constitution, statutes and case law in Idaho set forth the principles of the prior appropriation doctrine, those principles are more easily stated than applied. These principles become even more difficult, and harsh, in their application in times of drought. Because of concepts like beneficial use, waste, reasonable means of diversion and full economic development, the decisions are highly fact driven and sometimes have unintended or unfortunate consequences. The district judge took a very difficult issue—the constitutionality of the CM Rules—and did an exemplary job in analyzing the issues presented, documenting the historical context of the problems and articulating a reasoned basis for his ultimate conclusions. While this opinion does not reach those same conclusions, we nevertheless accept large parts of the district judge's analysis and attempt to use his analysis to clarify our interpretation of the CM Rules.

It is also important to point out those issues which the district court decided against American Falls and from which no appeal was taken. The district court noted that the CM Rules incorporate concepts to be considered in responding to a delivery call, such as: material injury; reasonableness of the senior water right diversion; whether a senior right can be satisfied using alternate

points and/or means of diversion; full economic development; compelling a surface user to convert his point of diversion to a ground water source; and reasonableness of use. The court observed that the Rules are not facially unconstitutional in having done so. The district court rejected American Falls' position at summary judgment that water rights in Idaho should be administered strictly on a priority in time basis. Moreover, the district court noted that if the statute or rule can be construed in a manner which is constitutional, the provision will withstand a challenge. (citing *State v. Prather*, 135 Idaho 770, 773, 25 P.3d 83, 86 (2001)).

It was the failure of the CM Rules to "also integrate the concomitant tenets and procedures related to a delivery call, which have historically been held to be necessary to give effect to the constitutional protections pertaining to senior water rights" with which the district court found fault, and it is that conclusion this opinion will analyze. The district court held:

> Specifically, the [CM Rules] fail: 1) to establish a procedural framework properly allocating the well established burdens of proof; 2) to define the evidentiary standards that the Director is [to] apply in responding to a call; 3) to give the proper legal effect to a partial decree: 4) to establish objective criteria necessary to evaluate the aforementioned factors; and 5) to establish a workable, procedural framework for processing a call in a time frame commensurate with the need for water—especially irrigation water.

With that background, we proceed with an analysis of the issues raised on appeal by the IDWR.

**A. Did the district court properly exercise jurisdiction before all administrative remedies were exhausted?**

■ Although both American Falls and IGWA exercised their right to request an administrative hearing within fifteen days of the Director issuing the Relief Order, American Falls filed a complaint in the district court for declaratory relief while the administrative hearing was pending. Historically, this Court has not permitted a party to seek declaratory relief until administrative remedies have been exhausted, unless the party is challenging a rule's facial constitutionality. I.C. § 67–5271; *Regan v. Kootenai County*, 140 Idaho 721, 724, 100 P.3d 615, 618 (2004). The Idaho Administrative Procedure Act (IDAPA) provides that "[a] person is not entitled to judicial review of an agency action until that person has exhausted all administrative remedies required in this chapter." I.C. § 67–5271. Although the district court found the CM Rules were unconstitutional on their face, the district court discussed the constitutionality of the Rules "as applied" to the facts of this case. The question is whether the court wrongfully exercised its authority in declaring the Rules invalid in reference to the particulars of this case before a factual record could be developed in an administrative hearing.

■ A party may challenge a statute as unconstitutional "on its face" or "as applied" to the party's conduct. *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003). A facial challenge to a statute or rule is "purely a question of law." *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Generally, a facial challenge is mutually exclusive from an as applied challenge. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. For a facial constitutional challenge to succeed, the party must demonstrate that the law is unconstitutional in *all* of its applications. *Id.* In other words, "the challenger must establish that no set of circumstances exists under which the [law] would be valid." *Id.* In contrast, to prove a statute is unconstitutional "as applied", the party must only show that, as applied to the defendant's conduct, the statute is unconstitutional. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. A district court should not rule that a statute is unconstitutional "as applied" to a particular case until administrative proceedings have concluded and a complete record has been developed. I.C. § 67–5277 (judicial review of disputed issues of fact must be confined to the agency record for judicial review); *Lindstrom v. Dist. Bd. Of Health Panhandle Dist. I*, 109 Idaho 956, 712 P.2d 657 (1985) (court engaged in an "as applied" analysis because no factual issues remained).

■ An "on its face" constitutional analysis may not be combined with an "as applied" constitutional analysis. *Korsen,* 138 Idaho at 712, 69 P.3d at 132. In other words, a court may hear both types of challenges to a rule's constitutional validity; however, it may not do a "hybridized" form of either test, in which the two tests are combined into a single analysis. *Id.; See Lindstrom v. Dist. Bd. Of Health Panhandle Dist. I,* 109 Idaho 956, 712 P.2d 657 (1985).

In this case, the district court recognized that parties must choose between either a facial or "as applied" constitutional challenge and that an "as applied" analysis is inappropriate before administrative proceedings have been fully completed. The court, nevertheless, went on to say that it would apply both a facial and as applied analysis because the case is "not conducive to such a rigid application." The district court acknowledged that the Director had not yet had an opportunity to fully determine if American Falls was entitled to administration of its water rights and therefore, "a strict 'as applied' analysis is not technically proper." The court explained that it planned to determine if the CM Rules were facially unconstitutional "in every application" while utilizing "the underlying facts in this case to determine whether the [CM Rules] are invalid, and to illustrate how the [CM Rules] were actually being applied." While it appears the district court attempted to conduct an analysis based on a facial challenge only, the court also referenced an earlier decision, the Notice of Clarification of Oral Order, dated December 16, 2005, and stated that it would apply both a facial and an as applied analysis to the extent the facts were already established and to illustrate how the court believed the Director would be applying the CM Rules.

■ The district judge also concluded a broader analysis was necessary because the Director had no authority to rule on the constitutionality of the Rules. Although a district court has jurisdiction to decide constitutional issues, administrative remedies generally must be exhausted before constitutional claims are raised. *Owsley v. Idaho Indus. Comm'n,* 141 Idaho 129, 134, 106 P.3d

455, 460 (2005). Other jurisdictions have also refused to excuse a party from exhausting administrative remedies merely because the party raises a constitutional issue that no official in the proceeding is authorized to decide, reasoning that "to hold otherwise would mean that a party whose grievance presents issues of fact or misapplication of rules or policies could nonetheless bypass his administrative remedies and go straight to the courthouse by the simple expedient of raising a constitutional issue." *Foremost Ins. Co. v. Public Serv. Comm'n,* 985 S.W.2d 793, 795 (Mo.Ct.App.1998). Thus, raising a constitutional challenge does not alleviate the necessity of establishing a complete administrative record.

■ The court further justified its incorporation of this case's facts into its analysis by asserting that I.C. § 67–5278 "contemplates the use of a factual history of a case when determining a rule's validity." Idaho Code section 67–5278 provides a means by which a party may gain standing before a district court, prior to exhausting administrative remedies, in order to seek a declaratory judgment on a rule's validity. The statute requires that the rule itself or its "threatened application" interfere with or impair, or threaten to interfere with or impair, the legal rights or privileges of the petitioner. I.C. § 67–5278; *Rawson v. Idaho State Bd. Of Cosmetology,* 107 Idaho 1037, 1041, 695 P.2d 422, 426 (Ct.App.1985). In *Rawson,* the Court of Appeals made clear that I.C. § 67–5278 is intended to establish qualifications for standing and is not a vehicle by which courts may decide factual issues prior to the completion of an administrative proceeding. *Id.* The Court of Appeals concluded that the district court erred when it "did not limit its treatment of the unlawful conduct question to a determination of standing." *Id.* Further, the Court of Appeals held the factual question was addressed "prematurely" as the court "in essence took the issue from the Board and decided it de novo." *Id.* This Court is persuaded by the analysis in *Rawson* that the "threatened application" language in I.C. § 67–5278 is there to permit standing to challenge a rule, but does not eliminate the need for completion of adminis-

trative proceedings for an as applied challenge.

■■■ "Important policy considerations underlie the requirement for exhausting administrative remedies, such as providing the opportunity for mitigating or curing errors without judicial intervention, deferring to the administrative processes established by the Legislature and the administrative body, and the sense of comity for the quasi-judicial functions of the administrative body." *White v. Bannock County Comm'rs*, 139 Idaho 396, 401–02, 80 P.3d 332, 337–38 (2003). Additionally, a district court cannot properly engage in an "as applied" constitutional analysis until a complete factual record has been developed. I.C. § 67–5277; *Lindstrom v. Dist. Bd. Of Health Panhandle Dist. I*, 109 Idaho 956, 712 P.2d 657 (1985). The district court should not blur the lines between a facial and as applied analysis by engaging in a hybrid analysis.

■■■ There are two exceptions to the rule that an as applied analysis is appropriate only if all administrative remedies have been exhausted: when the interests of justice so require and when an agency has acted outside of its authority. *Regan*, 140 Idaho at 726, 100 P.3d at 619. It has not been argued, nor did the district court find, that the interests of justice required an as applied analysis here.

■■■ As to the agency's statutory authority, to retain its authority over a controversy, an agency must be acting within the scope of the authority conferred upon it. *Roeder Holdings, L.L.C. v. Bd. of Equalization of Ada County*, 136 Idaho 809, 813, 41 P.3d 237, 241 (2001). While the district court discussed whether the Director had exceeded his statutory authority, it is a circuitous analysis. Clearly, the Director does have the statutory authority to promulgate the CM Rules. To the extent the CM Rules do not comply with the Idaho Constitution, the Director has exceeded his authority, but that still depends on an analysis in the first instance of whether the CM Rules do indeed contradict the constitutional provisions relating to the prior appropriation doctrine. Thus, the exception for when an agency exceeds its authority does not apply unless the CM Rules are facially unconstitutional. Therefore, this Court's review will be in terms of the CM Rules' constitutionality on their face and not in terms of the Rules' "threatened application" or "as applied." The issue is whether the challenged provisions are void in all possible applications, or whether there are a set of circumstances in which they may be constitutionally applied.

**B. Did the district court err in holding that the CM Rules are facially unconstitutional based on a lack of certain "procedural components"?**

As indicated above, the district court found that because the CM Rules failed to articulate certain procedural components of the prior appropriation doctrine according to Idaho law, the CM Rules are facially unconstitutional. After agreeing with the IDWR that "there is a lot more to Idaho's version of the prior appropriation doctrine than just 'first in time,'" the district court observed:

> ... there are two additional primary and essential principles of Idaho's version of the prior appropriation doctrine which are at issue in the administration of established rights but which are absent from the [CM Rules]. They are that in times of shortage there is the presumption of injury to a senior by the diversion of a junior, and the well engrained burdens of proof.

Again, later in the opinion, the district court further refined its conclusion that the CM Rules are constitutionally deficient "for failure to also integrate the concomitant tenets and procedures related to a delivery call ..." and said specifically they are deficient in that the CM Rules fail:

> 1) to establish a procedural framework properly allocating the well established burdens of proof; 2) to define the evidentiary standards that the Director is [to] apply in responding to a call; 3) to give the proper legal effect to a partial decree: 4) to establish objective criteria necessary to evaluate the aforementioned factors; and 5) to establish a workable, procedural framework for processing a call in a time frame commensurate with the need for water—especially irrigation water.

However, as the IDWR points out, CM Rule 20.02 provides that: "[T]hese rules acknowledge all elements of the prior appropriation doctrine as established by Idaho law." "Idaho law," as defined by CM Rule 10.12, means "[T]he constitution, statutes, administrative rules and case law of Idaho." Thus, the Rules incorporate Idaho law by reference and to the extent the Constitution, statutes and case law have identified the proper presumptions, burdens of proof, evidentiary standards and time parameters, those are a part of the CM Rules. Due to the changing nature of the law and rules, it is unnecessary to incorporate extant law unless specifically necessary to a clear understanding of the particular Rule. This is a facial challenge to these Rules and if it is clear there are circumstances under which these Rules may be constitutionally applied to provide adequate procedural safeguards, then the Rules withstand a facial challenge. To the extent one can bring a constitutional claim based on a particular fact scenario that occurred and was permitted within the Rules, an "as applied" challenge is appropriate.

### 1. Burdens of proof and evidentiary standards

Specifically, the district court found fault because the CM Rules fail to specifically articulate the applicable burdens of proof and evidentiary standards. After stating that the burdens are "integral to the constitutional protections accorded water rights," the court noted that "[T]he CMR's make absolutely no reference to these relative burdens of proof." The court also quoted the IDWR, which "acknowledged" that the Rules did not recite the burden of proof. The district court then concluded that "under these circumstances, no burden equates to impermissible burden shifting." The district court was critical of the Rules' failure to recite the burdens, rather than acknowledging that those standards were incorporated by reference in Rule 20.02 as part of Idaho statutory and case law. This was contrary to the court's obligation to "seek an interpretation of a statute that upholds it constitutionality." *In Re Bermudes (East. Idaho Reg. Med. Ctr. v. Minidoka County)*,

141 Idaho 157, 159, 106 P.3d 1123, 1125 (2005).

American Falls asserts on appeal that specific provisions of the Rules squarely contradict Idaho case law by placing the burden on the senior rather than the junior water user. American Falls argues that the seniors "are left to initiate a series of 'contested cases' and prove they are suffering 'material injury' before the Director and the watermasters will take any action. The result is a lack of water to seniors, while juniors continue to divert unabated." Much emphasis is placed on CM Rule 30.01, which provides:

01. **Delivery Call (Petition).** When a delivery call is made by the holder of a surface or ground water right (petitioner) alleging that by reason of diversion of water by the holders of one (1) or more junior-priority ground water rights (respondents) the petitioner is suffering material injury, the petitioner shall file with the Director a petition in writing containing, at least, the following ...

. . .

c. All information, measurements, data or study results available to the petitioner to support the claim of material injury.

IDAPA 37.03.11.30.01. American Falls also cites Rule 40.01, which states that responses to calls are made when a senior files a delivery call "alleging" he is suffering "material injury" and upon a finding by the Director that material injury is occurring. This, American Falls argues, places the burden on the senior to prove material injury. A plain reading of the CM Rules does not support that interpretation, particularly in the context of a facial challenge to the Rules. The Rules simply require that a senior who is suffering injury file a delivery call with the Director and allege that the senior is suffering material injury. This is presumably to make the Director aware that such injury is occurring and to give substance to the complaint. Additionally, the Rules ask that the petitioner include all available information to support the call in order to assist the Director in his fact-finding. Nowhere do the Rules state that the senior must prove material injury before the Director will make such

a finding. To the contrary, this Court must presume that the Director will act in accordance with Idaho law, as he is directed to do under CM Rule 20.02. While it is possible the Director could apply the CM Rules in an unconstitutional manner, that would be an opportune time for an "as applied" challenge; however now, in the absence of such facts indicating the Director has misapplied the Rules in violation of Idaho law, our analysis is limited to the Rules as written, or "on their face," and the Rules do not permit or direct the shifting of the burden of proof. Therefore, this Court does not find that the failure to explicitly recite certain procedural components such as the burdens of proof makes the CM Rules unconstitutional on their face.

The district court was also concerned that the CM Rules did not specifically articulate an appropriate standard for the Director to apply when responding to a delivery call: that is, should the required proof be clear and convincing, a preponderance of the evidence, or merely what the Director deems "reasonable." Again, the failure to state which standard applies does not mean the CM Rules can never be applied in a constitutional fashion—and the Rules' incorporation of the Idaho Constitution, statutes and case law would indicate to the contrary. Requirements pertaining to the standard of proof and who bears it have been developed over the years and are to be read into the CM Rules. There is simply no basis from which to conclude the Director can never apply the proper evidentiary standard in responding to a delivery call.

### 2. Timeliness in responding to a delivery call

■ As discussed above, parties must generally exhaust administrative remedies before challenging a rule's constitutionality, particularly when asserting the rule is unconstitutional as applied to the facts, because a complete administrative record is necessary for such a determination. I.C. § 67–5277; *Owsley*, 141 Idaho at 134, 106 P.3d at 460. The issue regarding whether or not American Falls was denied due process at the administrative level due to the length of time it had to wait for a hearing is arguably an issue which has been factually established, at least as of the time this declaratory action was filed. In other words, the completion of an administrative record would not aid the Court in its determination of what has transpired so far in the application of the CM Rules to the current Delivery Call. We will address both challenges.

■ The district court stated that the absence of any procedural time frames in the CM Rules "at least as to curtailment for irrigation water" makes the Rules unconstitutional. The court noted that although American Falls initiated a delivery call in January of 2005, as of May of 2006, the Director had not yet entered a final order. American Falls claims the process provided by the CM Rules does not allow for timely administration of its water rights. However, as noted above with respect to the burdens of proof and evidentiary standards, it is not necessary that every procedural requirement be recited in the CM Rules, when the Rules clearly have incorporated the provisions of the Idaho Constitution, statutes and case law. We agree with the district court's exhaustive analysis of Idaho's Constitutional Convention and the court's conclusion that the drafters intended that there be no unnecessary delays in the delivery of water pursuant to a valid water right. Clearly, a timely response is required when a delivery call is made and water is necessary to respond to that call. There is nothing in the Rules which would prohibit that from occurring, however. In other words, we cannot say there are no conceivable sets of circumstances under which the Rules could be constitutionally applied to provide for the timely delivery of water. Thus, the Rules are not facially defective in this regard.

The argument is also made that on the state of the record developed so far, the Rules are not being applied in a timely way to respond to American Falls' Delivery Call. Even if this Court embarked on an analysis of an as applied challenge to the Rules, the facts developed thus far do not support American Falls' contention that it was deprived of timely administration in response to the Delivery Call.

American Falls submitted its Delivery Call to the Director in January of 2005, fearing that shortages would occur in the upcoming year. Thus, this was not at a time when water was actually needed. IDWR received the inflow forecast in April of 2005 and the Director issued a Relief Order less than two weeks later. The Director made the Order effective immediately pursuant to I.C. § 67–5247 (Emergency Proceedings), ordering juniors to provide "replacement" water in sufficient quantities to offset depletions in American Falls' water supplies. Thus, American Falls was provided timely relief in response to the Delivery Call in the form of the Relief Order issued just months after their call and only weeks after the Director received water forecasts for the upcoming year.

Incident to the Relief Order, the parties were entitled to a hearing. A hearing was initially set by the Director for August, 2005, still within the current irrigation season and during a time when American Falls had received some relief in response to its Delivery Call. Although both IGWA and American Falls exercised their right to a hearing and one was set, American Falls filed this action with the district court on August 15, 2005, before the hearing could be held. Subsequently, American Falls requested stays and continuances in the hearing schedule, one of which requested that the hearing be reset to no sooner than June 15, 2006. It appears that American Falls preferred to have its case heard outside of the administrative process and went to great lengths, first to remove the case from the administrative process and second, to delay the hearing. While the district court acknowledged it was "led to believe" that the parties had stipulated to delay the administrative resolution of the case pending the district court's decision, the court nevertheless also appeared to hold that delay against the Director and the CM Rules by finding there had been an unacceptable delay in responding to the Delivery Call. The record simply does not support that assertion and, as indicated above, there is likewise no basis for a determination that the CM Rules are unconstitutional in this regard.

Clearly it was important to the drafters of our Constitution that there be a timely resolution of disputes relating to water. While there must be a timely response to a delivery call, neither the Constitution nor the statutes place any specific timeframes on this process, despite ample opportunity to do so. Given the complexity of the factual determinations that must be made in determining material injury, whether water sources are interconnected and whether curtailment of a junior's water right will indeed provide water to the senior, it is difficult to imagine how such a timeframe might be imposed across the board. It is vastly more important that the Director have the necessary pertinent information and the time to make a reasoned decision based on the available facts.

Absent additional evidence that the Director abused his discretion or that the delay in the hearing schedule was unreasonable despite the self-imposed extensions (both of which are appropriate to an "as applied" challenge on a fully developed administrative record), there is no basis for setting aside the CM Rules based upon the lack of specifically articulated time standards.

### 3. Lack of objective standards

The district court noted that the CM Rules contain criteria for the Director to consider in responding to a delivery call, but was concerned by "the absence of any objective standards from which to evaluate the criteria." Rule 42 lists factors the Director may consider in determining material injury and whether the holders of water rights are using water efficiently and without waste, which are decisions properly vested in the Director. Those factors, of necessity, require some determination of "reasonableness" and it is the lack of an objective standard—something other than "reasonableness"—which caused the district court to conclude the Rules were facially defective. Given the nature of the decisions which must be made in determining how to respond to a delivery call, there must be some exercise of discretion by the Director. While it may be that the Director could apply these factors in an unreasonable way, the Rules are not facially deficient in not being more specific in defining what is "reasonable" in any given case. Again, this is

an instance where an as applied constitutional challenge may be appropriate, but it does not justify voiding the Rules in their entirety for lack of objective standards beyond those specifically listed in Rule 42 and elsewhere.

### 4. Failure to give legal effect to a partial decree

■ The district court stated that "with the exception of the water rights from Basin 01 (the main stem of the Snake River upstream from Milner Dam), the water rights at issue are within one or more organized water districts.... Significant to this analysis is that many of these rights have been adjudicated and decreed in the SRBA." These water rights have already been determined by the Snake River Basin Adjudication court, which, at the time of the adjudication of these rights, considered the Director's recommendations, which identified issues pertaining to quantity, purpose of use, point of diversion, etc. The CM Rules, the district court concluded, allow the Director to, in essence, re-adjudicate water rights by conducting a complete re-evaluation of the scope and efficiencies of a decreed water right in conjunction with a delivery call. In effect, the court stated, a senior who has an adjudicated water right through a partial decree must re-defend the elements of his adjudicated right each time he makes a delivery call.

As indicated previously, this Court can consider a facial challenge to the constitutionality of the Rules only when the challenger establishes that "*no* set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987) (emphasis added). As stated by the district court in this case, many of the water rights have already been adjudicated in the SRBA, and some may be in the process of being adjudicated. The court recognized that "a partial decree is not conclusive as to any post-adjudication circumstances or unauthorized changes in its elements." The district judge acknowledged that even with decreed water rights, the Director does have some authority to make determinations regarding material injury, the reasonableness of a di-

version, the reasonableness of use and full economic development. Even if this Court were to conclude that the CM Rules allow for further limited analysis in some instances where, depending on the case and its specific procedural background, there has been an adjudication, this does not mean the Rules are unconstitutional in *all* applications. Rather, the Rules' constitutionality is dependent upon the procedural background of the specific case, which would make this an "as applied" constitutional attack.

CM Rule 42 lists factors "the Director may consider in determining whether the holders of water rights are suffering material injury and using water efficiently and without waste...." IDAPA 37.03.11.42.01. Such factors include the system, diversion, and conveyance efficiency, the method of irrigation water application and alternate reasonable means of diversion. *Id.* American Falls argues the Director is not authorized to consider such factors before administering water rights; rather, the Director is "required to deliver the *full quantity* of decreed senior water rights according to their priority" rather than partake in this re-evaluation. (emphasis in original brief). American Falls asserts the Rules are defective in giving the Director, in essence, the authority to negotiate with the senior water right holder regarding the quantity of water he will enforce under a delivery call—a quantity that in some instances, has already been adjudicated.

■ Clearly, even as acknowledged by the district court, the Director may consider factors such as those listed above in water rights administration. Specifically, the Director "has the duty and authority" to consider circumstances when the water user is not irrigating the full number of acres decreed under the water right. If this Court were to rule the Director lacks the power in a delivery call to evaluate whether the senior is putting the water to beneficial use, we would be ignoring the constitutional requirement that priority over water be extended only to those using the water. Additionally, the water rights adjudications neither address, nor answer, the questions presented in delivery calls; thus, responding to delivery calls, as conducted pursuant to the CM

Rules, do not constitute a re-adjudication. For example, the SRBA court determines the water sources, quantity, priority date, point of diversion, place, period and purpose of use. I.C. §§ 42–1411(2)(a)–(j). However, reasonableness is not an element of a water right; thus, evaluation of whether a diversion is reasonable in the administration context should not be deemed a re-adjudication. *Schodde v. Twin Falls Land & Water Co.*, 224 U.S. 107, 32 S.Ct. 470, 56 L.Ed. 686 (1912). Moreover, a partial decree need not contain information on how each water right on a source physically interacts or affects other rights on that same source.

> Typically, the integration of priorities means limiting groundwater use for the benefit of surface water appropriators because surface water generally was developed before groundwater. The physical complications of integrating priorities often have parallels in the administration of solely surface water priorities. The complications are just more frequent and dramatic when groundwater is involved.

Douglas L. Grant, *The Complexities of Managing Connected Surface and Ground Water Under the Appropriation Doctrine*, 22 Land & Water L.Rev. 63, 73 (1987).

Conjunctive administration "requires knowledge by the IDWR of the relative priorities of the ground and surface water rights, how the various ground and surface water sources are interconnected, and how, when, where and to what extent the diversion and use of water from one source impacts the water flows in that source and other sources." *A & B Irrigation Dist. v. Idaho Conservation League*, 131 Idaho 411, 422, 958 P.2d 568, 579 (1997). That is precisely the reason for the CM Rules and the need for analysis and administration by the Director. In that same vein, determining whether waste is taking place is not a re-adjudication because clearly that too, is not a decreed element of the right.

American Falls argues, though, that Rule 30.01 improperly shifts the burden to the senior appropriator who has already obtained a decreed right and forces the senior right holder to re-adjudicate or re-prove his decreed right whenever he makes a delivery call. The district court agreed and held that the Rules were fatally defective in not containing a presumption that "when a junior diverts or withdraws water in times of a water shortage, it is presumed that there is injury to a senior." The court cited *Moe v. Harger*, 10 Idaho 302, 307, 77 P. 645, 647 (1904), as support for that holding. *Moe,* however, was a case dealing with competing surface water rights and this case involves interconnected ground and surface water rights. The issues presented are simply not the same.

> When water is diverted from a surface stream, the flow is directly reduced, and the reduction is soon felt by downstream users unless the distances involved are great. When water is withdrawn from an aquifer, however, the impact elsewhere in the basin or on a hydrologically connected stream is typically much slower.

Douglas L. Grant, *The Complexities of Managing Connected Surface and Ground Water Under the Appropriation Doctrine*, 22 Land & Water L.Rev. 63, 74 (1987).

While perhaps the Rules can be read in different ways, they can be read consistently with constitutional and statutory principles. The Rules require the petitioner, that is the senior water rights holder, to file a petition alleging that by reason of diversion of water by junior priority ground water rights holders, the petitioner is suffering material injury. That is consistent with the statutory provision which requires a surface priority water right holder claiming injury by junior water right holders pumping from an aquifer to file a "written statement under oath" setting forth "the facts upon which [he] founds his belief that the use of his right is being adversely affected" by the pumping. I.C. § 42–237b. The Rules further provide that the petitioner file a description of his water rights, including the decree, license, permit or claim for such right, the water diversion and delivery system he is using and the beneficial use being made. The Rules then provide three additional types of information which must be provided by the petitioner; however, the Rules are clear in saying that the additional information should be provided only *if available* to the petitioner.

The Rules should not be read as containing a burden-shifting provision to

make the petitioner re-prove or re-adjudicate the right which he already has. We note that in the Initial Order entered in this case, the Director requested extensive information from American Falls for the prior fifteen irrigation seasons, to which American Falls objected in part. While there is no question that some information is relevant and necessary to the Director's determination of how best to respond to a delivery call, the burden is not on the senior water rights holder to re-prove an adjudicated right. The presumption under Idaho law is that the senior is entitled to his decreed water right, but there certainly may be some post-adjudication factors which are relevant to the determination of how much water is actually needed. The Rules may not be applied in such a way as to force the senior to demonstrate an entitlement to the water in the first place; that is presumed by the filing of a petition containing information about the decreed right. The Rules do give the Director the tools by which to determine "how the various ground and surface water sources are interconnected, and how, when, where and to what extent the diversion and use of water from one source impacts [others]." *A & B Irrigation Dist.*, 131 Idaho at 422, 958 P.2d at 579. Once the initial determination is made that material injury is occurring or will occur, the junior then bears the burden of proving that the call would be futile or to challenge, in some other constitutionally permissible way, the senior's call.

For the purposes of the facial challenge with which we are faced in this appeal, the CM Rules do not unconstitutionally force a senior water rights holder to re-adjudicate a right, nor do the Rules fail to give adequate consideration to a partial decree. In an "as applied" challenge, it would be possible to analyze on a fully developed factual record whether the Director has improperly applied the Rules to place too great a burden on the senior water rights holder. Facially, however, the Rules do not do so.

**C. Are the "reasonable carryover" provisions of Rule 42.01.g. of the CM Rules facially unconstitutional?**

 Storage water is water held in a reservoir and is intended to assist the holder of the water right in meeting their decreed needs. Carryover is the unused water in a reservoir at the end of the irrigation year which is retained or stored for future use in years of drought or low-water. *See Rayl v. Salmon River Canal Co.*, 66 Idaho 199, 157 P.2d 76 (1945). One may acquire storage water rights and receive a vested priority date and quantity, just as with any other water right. I.C. § 42-202. There is no statutory provision for obtaining a decreed right to "carryover" water. Obviously, the quantity of any water available at the end of the irrigation year is dependent upon a number of factors like the irrigators' needs during the season, reservoir capacity and amount of water in the reservoir at the beginning of the season.

 The district court held that the CM Rules' provision allowing a "reasonable" amount of carry-over storage injures vested senior storage water rights in violation of the Idaho Constitution and water distribution statutes. The relevant provision is found in CM Rule 42, which provides:

**042: DETERMINING MATERIAL INJURY AND REASONABLENESS OF WATER DIVERSIONS (RULE 42).**

**01. Factors.** Factors the Director may consider in determining whether the holders of water rights are suffering material injury and using water efficiently and without waste include, but are not limited to, the following:

. . .

g. The extent to which the requirements of the holder of a senior-priority water right could be met with the user's existing facilities and water supplies by employment reasonable diversion and conveyance efficiency and conservation practices; provided, however, **the holder of a surface water storage right shall be entitled to maintain a reasonable amount of carry-over storage to assure water supplies for future dry years.** In determining a reasonable amount of carry-over storage, the Director shall consider the average annual

rate of fill of storage reservoirs and the average annual carry-over for prior comparable water conditions and the projected water supply for the system.

IDAPA 37.03.11.042.01.g. (emphasis added). In responding to a delivery call, this Rule lists factors for the Director to consider in making his determination, including the possible use of some storage water by the senior in order to avoid unnecessarily cutting off water to a junior water right holder. It is the district court's position that: "absent a proper showing of waste, senior storage right holders are allowed to store up to the quantity stated in their storage right, free of diminishment by the Director." Thus, the question is: are the holders of storage water rights also entitled to insist on all available water to carryover for future years in order to assure that their full storage water right is met (regardless of need).

The district court's decision is based on the assumption that storage rights are property rights entitled to legal protection. *Washington County Irrigation Dist. v. Talboy*, 55 Idaho 382, 385, 43 P.2d 943, 945 (1935). In *Talboy*, this Court held that when water is stored, it becomes "the property of the appropriators … impressed with the public trust to apply it to a beneficial use." *Id.* Importantly, *Talboy* did not address the issue of carryover. The Court has also held that if one appropriates water for a beneficial use, he has a valuable right entitled to protection. *Murray v. Public Utilities Comm'n*, 27 Idaho 603, 619, 150 P. 47, 50 (1915); *Bennett v. Twin Falls North Side Land & Water Co.*, 27 Idaho 643, 651, 150 P. 336, 339 (1915). Nevertheless, that property right is still subject to other requirements of the prior appropriation doctrine. The question is whether the Director's authority to limit the amount of water a surface storage water right holder can save and carryover to the next year, is an unconstitutional impairment of storage water rights. IGWA and IDWR argue that Idaho law does not allow curtailment of vested junior rights when the senior does not need additional water to achieve the authorized beneficial use. They cite to *Schodde v. Twin Falls Land & Water Co.*, 161 F. 43 (9th Cir.1908), which held that water rights must be exercised with "some

regard to the rights of the public" and "necessities of the people, and not so as to deprive a whole neighborhood or community of its use and vest an absolute monopoly in a single individual." *Id.* at 47. It is IGWA's position based on *Schodde*, that even vested water rights are not absolute; rather, such rights are limited to some extent, by the needs of other water users and thus, it is in accordance with Idaho law to place a "reasonable" limit on the amount of water a person may carryover for storage. The point of the reasonable carry-over provision, argues IGWA, is to determine whether the senior has a sufficient water supply to meet its actual needs, rather than routinely permitting water to be wasted through storage and non-use.

This Court has invalidated a rule adopted by a canal company that allowed an individual shareholder of the company to hold-over his allotted share of stored water free from limitations, which reduced the allocated amount of other shareholders. *Glavin v. Salmon River Canal Co.*, 44 Idaho 583, 258 P. 532 (1927). The Court invalidated the rule based on "possible abuses," such as a situation where a shareholder does not require the full use of his allotment, but he carries it over to the detriment of others. *Id.* at 589, 258 P. at 534. The Court noted:

> … and we think it clear that, whatever may be the exact nature of the ownership by an appropriator of water thus stored by him, any property rights in it must be considered and construed with reference to the reasonableness of the use to which the water stored is applied or to be applied.

*Id.* at 588–589, 258 P. at 534.

Thus, it is argued that the same logic supports CM Rule 42, which allows the Director to refrain from curtailing junior water rights if a senior has sufficient storage rights to meet his needs. However, the Court in *Rayl v. Salmon River Canal Co.*, 66 Idaho 199, 157 P.2d 76 (1945) limited the *Glavin* holding to the facts in that case: "Quite obviously, the above opinion did not hold and was not intended to hold that irrigation organizations and/or appropriators of water could not accumulate within their appropria-

tions and hold storage over from one season to the next.... The court merely held the particular rule offended in certain particulars." *Rayl*, 66 Idaho at 201, 157 P.2d at 77. This is simply a recognition that it is permissible for the canal company to hold water over from one year to the next absent abuse. The Court upheld the amended rules in *Rayl* because the earlier deficiencies and possible abuses identified in *Glavin* had been rectified. The Court also recognized the "fundamental difference" between "the diversion and use of water from a flowing stream and a reservoir." *Id.* at 208, 157 P.2d at 80. These cases do not address situations where stored carryover water was, at the time of the litigation, being wasted by storing away excessive amounts in times of shortage. Rather, the Court foresaw abuses that could occur when one is allowed to carryover water despite detriment to others. Concurrent with the right to use water in Idaho "first in time," is the obligation to put that water to beneficial use. To permit excessive carryover of stored water without regard to the need for it, would be in itself unconstitutional. The CM Rules are not facially unconstitutional in permitting some discretion in the Director to determine whether the carryover water is reasonably necessary for future needs.

Again, this is an area where the Rules are not facially invalid, but there is room for challenge on an "as applied" basis if the Rules are not applied in a manner consistent with the Constitution. Clearly American Falls has decreed storage rights. Neither the Idaho Constitution, nor statutes, permit irrigation districts and individual water right holders to waste water or unnecessarily hoard it without putting it to some beneficial use. At oral argument, one of the irrigation district attorneys candidly admitted that their position was that they should be permitted to fill their entire storage water right, regardless of whether there was any indication that it was necessary to fulfill current or future needs and even though the irrigation districts routinely sell or lease the water for uses unrelated to the original rights. This is simply not the law of Idaho. While the prior appropriation doctrine certainly gives pre-eminent rights to those who put water to beneficial use first in time, this

is not an absolute rule without exception. As previously discussed, the Idaho Constitution and statutes do not permit waste and require water to be put to beneficial use or be lost. Somewhere between the absolute right to use a decreed water right and an obligation not to waste it and to protect the public's interest in this valuable commodity, lies an area for the exercise of discretion by the Director. This is certainly not unfettered discretion, nor is it discretion to be exercised without any oversight. That oversight is provided by the courts, and upon a properly developed record, this Court can determine whether that exercise of discretion is being properly carried out. For the purposes of this appeal, however, the CM Rules are not facially defective in providing some discretion in the Director to carry out this difficult and contentious task. This Court upholds the reasonable carryover provisions in the CM Rules.

**D. Are domestic and stock water rights properly exempt?**

Not specifically raised by IDWR, although raised generally in its argument that the district court erred in voiding the CM Rules in their entirety, is the issue relating to the CM Rules' exclusion of domestic and stock water rights from administration. The district court concluded that the exclusion of these rights is unconstitutional and amounts to an unlawful taking of prior vested water rights. Article XV, § 3 of the Idaho Constitution gives priority to domestic water rights but requires that junior water right holders must compensate seniors for any taking of their water. Article XV, § 3 of the Idaho Constitution provides, in pertinent part:

> ... Priority of appropriation shall give the better right as between those using the water; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall (subject to such limitations as may be prescribed by law) have preference over those claiming for any other purpose.... But the usage by such subsequent appropriators shall be subject to such provisions of law regulating the tak-

ing of private property and public use, as referred to in section 14 of article I of this Constitution.

The relevant CM Rules provision also provides domestic water rights with priority, exempting them from delivery calls; however, unlike the Constitution, the Rules do not address whether the senior user will be compensated for the taking:

> 20.11. Domestic and Stock Watering Ground Water Rights Exempt. A delivery call shall not be effective against any ground water right used for domestic purposes regardless of priority date where such domestic use is within the limits of the definition set forth in Section 42–111, Idaho Code, nor against any ground water right used for stock watering where such stock watering is within the limits of the definition set forth in Section 42–1401A(11), Idaho Code; provided, however, this exemption shall not prohibit the holder of a water right for domestic or stock watering uses from making a delivery call, including a delivery call against the holders of other domestic or stock watering rights, where the holder of such right is suffering material injury.

IDAPA 37.03.11.020.11. The district court concluded that this Rule permits domestic users to take senior water rights without having to provide any compensation. The question is if CM Rule 20.11 is in direct conflict with Article XV, Section 3 or if the two can be read together and applied in accordance with the Constitution. As discussed above, a provision of this same rule, Rule 20.02, incorporates by reference all Idaho law, including the Idaho Constitution, into the CM Rules. The Rules do not exclude the possibility of a takings claim to provide such compensation. The Rules simply restate the portion of Article XV, Section 3 that gives priority to domestic water users, stating that senior non-domestic users cannot curtail their use via a delivery call.

There is no requirement that the CM Rules must incorporate every possible remedy to a senior who feels that his water right has been improperly reduced. A separate takings claim is certainly not prohibited by the Rules. The case before us is a facial challenge; until faced with an appropriate factual record complaint, we decline to speculate about whether a senior water rights holder will be properly compensated. The Rules are sufficient as they are written.

## E. What is the effect of the severability clause?

The district court made no findings with respect to the severability clause found in Rule 4 of the CM Rules. IDAPA 37.03.11.004. The trial court simply concluded that the Rules were unconstitutional in their entirety and therefore completely void. Because this Court concludes that the district court erred in that determination, we need not address the impact of the severability clause and whether some provisions could continue in effect. *See, e.g., In re SRBA No. 39576*, 128 Idaho 246, 264, 912 P.2d 614, 632 (1995) ("When determining whether the remaining provisions in a statute can be severed from the unconstitutional sections, this Court will, when possible, recognize and give effect to the intent of the Legislature as expressed through a severability clause in the statute.").

## F. Are the Respondents entitled to attorney's fees?

American Falls has requested attorney fees on appeal if it prevails. Attorney's fees may be awarded to the prevailing party pursuant to I.C. § 12–117 if the Court finds that "the party against whom the judgment is rendered acted without a reasonable basis in fact or law." I.C. § 12–117. American Falls is not the prevailing party in this appeal and therefore, an award of fees is denied.

## G. Did the district court improperly revoke its order allowing the City of Pocatello to intervene?

In the action below, the City of Pocatello (City) moved to intervene as a party to the litigation, either by permission or as a matter of right. The motion was granted by the district court, without indicating whether it was permissive or by right, conditioned on the City's representation that it would not take any action which would delay the proceedings. At that point in the proceedings,

the district court had already heard arguments on a motion to dismiss and was drafting its opinion. There had also been motions filed for summary judgment which were noticed for hearing. The district court issued its decision denying the motion to dismiss. Ten days after the district court's ruling and eleven days before the hearing set on the pending motions, the City then moved to disqualify the judge for cause. The basis for the City's motion was an alleged conflict of interest, which the judge had disclosed to the City three months earlier. The district court ruled that the City had misrepresented its position and was taking action to delay the proceedings; therefore, the court revoked the earlier order granting intervention and denied the City's motion to disqualify. In that final order, the district court clarified that the earlier intervention had been granted on a permissive basis and not because of any determination that the City had a right to intervene. The City then appealed the decision denying intervention and also appealed the district judge's refusal to disqualify himself.

Pursuant to I.R.C.P. 24, a judge may grant either permissive intervention or intervention of right. Paraphrasing, intervention is a matter of right according to Rule 24:(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the subject of the action and the applicant is so situated that disposition of the action may impair the applicant's ability to protect that interest, "unless the applicant's interest is adequately represented by existing parties." I.R.C.P. 24(a). In its order, the district court determined that the City's interests as a holder of water rights were adequately represented by other parties to this action who likewise held water rights. "[I]ntervention as of right has been considered to be a mixed question of law and fact involving the discretion of a trial judge." *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 377, 816 P.2d 326, 333 (1991). The district court did not err in determining that the City's interests were adequately represented by others and, therefore, the City could only intervene if granted permission to do so.

A district court's decision to grant or deny permissive intervention is a matter of discretion. *Farrell v. Bd. of Comm'rs of Lemhi County*, 138 Idaho 378, 64 P.3d 304 (2002). In determining whether the trial court properly exercised its discretion, this Court engages in a three-part inquiry to determine: whether the trial court correctly perceived the issue as one of discretion; whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and whether the trial court reached its decision by an exercise of reason. *Id.* "On appeal, the appellant carries the burden of showing that the district court committed error. Error will not be presumed but must be affirmatively shown on the record by appellant." *Id.* at 390, 64 P.3d at 316, quoting *Western Cmty Ins. Co. v. Kickers Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002).

In its decision revoking the prior order granting intervention, the district court indicated that this was a discretionary decision. The district court also acted within its discretion and consistently with the legal standards and reached its decision through an exercise of reason. Specifically, the district court found that the City knew of the judge's alleged conflict as early as 2000, and that it was disclosed again by the judge two months before the City sought to intervene. Further, the district court observed that the City did not seek disqualification until ten days after the court ruled on the first contested motion. Finally, the district court concluded that intervention was sought for the purpose of prejudicial delay and the City had engaged in improper forum shopping. The City has not met its burden of demonstrating that the district court committed error in its exercise of discretion; thus, the district court properly revoked the order allowing the City to intervene. Consequently, there is no need to address the City's argument about the ruling on its motion to disqualify the district judge.

## VI. CONCLUSION

To the extent the district court engaged in an analysis of the constitutionality of the Rules "as applied" to the facts of this case

before administrative remedies were exhausted, it was in error. As to the perceived lack of procedural components articulated in the Rules, Rule 20.02 incorporates Idaho law; therefore, the failure to recite certain burdens and evidentiary standards, set specific timelines and set objective standards does not make the Rules facially unconstitutional. The CM Rules also survive a facial challenge in the recognition given to partial decrees and in the treatment of carryover water. The decision of the district court granting partial summary judgment to American Falls is reversed. The district court's revocation of the City's motion to intervene was not an abuse of discretion and is, therefore, affirmed. We award costs on appeal to the Appellants.

Chief Justice SCHROEDER and Justices BURDICK, JONES and KIDWELL, Pro Tem concur.